Brown *et al.*, executors, etc., *v.* Brown *et al.*

| | |
|---|---|
| 97 | 531 |
| e110 | 731 |
| 97 | 531 |
| e122 | 187 |
| 97 | 531 |
| 127 | 766 |

Where an instrument in the form of a deed to realty and duly recorded as such, after reserving to the maker a life-estate in the property therein described, purported to convey a one sixth undivided interest in such property to each of the maker's children for life, and declared that upon the death of each of such children his share should "descend to the legal heir or heirs of said deceased party, or to the devisee if said party should make a will and dispose of the same," it was not within the power of the superior court in the exercise of its equity powers, upon a proceeding instituted by the executors of the maker's will, in which will the instrument first above mentioned was recognized and referred to as a valid deed, and to which proceeding the maker's children alone were made defendants, to decree a cancellation of that instrument as a cloud upon the testator's title, upon the alleged ground that it was never delivered to nor accepted by the latter's children. If such a proceeding was maintainable at all for the purpose stated, the grandchildren of

the maker in life at the time it was filed were indispensable parties. The question as to how far a decree therein, even with such grandchildren before the court, would bind unborn grandchildren, is not now before this court for determination.

December 2, 1895.

Petition to cancel deed. Before Judge Lumpkin. Fulton superior court. March term, 1895.

Elizabeth Brown as executrix, and Julius L. and Joseph M. Brown as executors, of Joseph E. Brown, by their petition alleged, that in January, 1895, and after his death, they for the first time opened his safe to find his will, and upon reading it found a reference to a certain paper (of the form of a deed, a copy being attached) which was in his possession at the time of his death, and had been so far as they know from the date of its purported execution. It was never during his life delivered to or accepted by either one or more of his children, but was always kept in his own possession. It is void for want of delivery to or acceptance by any of the purported grantees, and the property therein sought to be conveyed thereby was never conveyed, and is the property of the estate of Joseph E. Brown, and should be sold and the proceeds distributed among his heirs by petitioners, in accordance with their several interests as the same appear in said will. The prayer was, that said pretended deed be cancelled as a cloud upon the title, and that a copy of the entry of cancellation be written across the face of the record of it; and for process to J. L. and J. M. Brown as individuals, and to Mary V. Connally, Elijah A., Sallie E. and George M. Brown.

The copy deed attached was dated September 26, 1883. In consideration of love, by it Joseph E. Brown conveyed to J. L., J. M., Elijah A., George M. and Sallie E. Brown and Mary V. Connally, his children, certain city property in Atlanta, estimated by him to be worth in the aggregate $120,000, "with the reservations, qualifications and re-

mainders herein contained." It reserved to the grantor a life-estate in the property, and provided: "At the death of said Joseph E. Brown said property is to go in remainder to the parties of the second part, children of the said Joseph E. Brown,   .   .   each having an equal share or interest with every other one of said children, and each to have the share to which he or she is entitled for and during his or her natural life, and at the death of each, then the share to which he or she was entitled; in other words, the one sixth undivided interest in said property, is to descend to the legal heir or heirs of said deceased party, or to the devisee if said party should make a will and dispose of the same, which each is hereby empowered to do; the said remainder at the death of·each is to go in fee simple to the heirs of the deceased or to the devisee as above mentioned.   The property donated by this conveyance is in no case to be considered or taken as an advancement in favor of or against any one of the heirs of my estate; it is simply a donation from affection, and not intended as an advancement."   This deed appears to have been recorded, October 11, 1883.

The will of Joseph E. Brown, dated August 19, 1886, with various codicils thereto, was afterward made an exhibit to the petition.   By it various specific legacies were made, not including the property mentioned in the deed; and after the payment of testator's debts and such legacies, and accounting for advancements on the part of his children (the advancements being set forth in the will, and none of them referring to the property mentioned in the deed), the property of the testator was directed to go to his children above mentioned.   The will contained also the following provisions: (Item 8th) ·"In addition to the advancement made of $15,000 to each of children above stated, I conveyed, by deed now of record in the clerk's office in Fulton county, the real estate known as the Brown block and the Pittman building on Wall street, and the

building occupied by Lewis on Alabama street, to my children, reserving a life-estate to myself, and then a life-estate to each of my children in their respective shares, with remainder to their children, etc., as set forth in said deed, which is not now before me but which I believe is dated September 26, 1883. I estimated the property at $120,-000 at the time the conveyance was made. Of course the rents on this property will at my death go to my children. But I desire the rent on all the other buildings I may own in Atlanta at the time of my death, to be applied, together with dividends on stocks as above mentioned, to the payment of specific legacies until they are fully paid off; except in the case of the Kiser building, where my wife is to have $2,000 per annum, paid in monthly instalments, which is to take precedence." (Item 12th) "When the term 'children' is used in this will, as legatees to receive legacies or dividends, my intention is in all cases to embrace my children in life at the time. If there be one or more deceased, and such deceased child or children left a child or children, the child or children of such deceased child of mine is to represent the parent, and take the legacy or the distributive share that the parent would have taken if in life. If one of my children be dead, leaving no living child but leaving a grandchild, the grandchild or grandchildren of the deceased child of mine are to represent the parent, and take as above mentioned. And when my deceased child has left more than one child, the children are to divide the estate which would have been due their parents if in life, equally among themselves."

Each of the parties as to whom process was prayed acknowledged due and legal service, and, together with the petitioners, signed an agreement that the judge without a jury pass upon the petition and the answer thereto, "as there is no question of fact involved," and that he render his judgment in accordance with the law and facts. The defendants answered, admitting the statements of the peti-

tion, and alleging that they are all of full age; that the deed was never delivered to or accepted by any one of them, and they believe that the property belongs to the estate of Joseph E. Brown; and that they believe said pretended deed is a cloud upon the title to the property therein named, and should be cancelled.

The judge rendered a decision which, after setting forth a summary of the facts before reported, proceeded as follows:

"The petition made the children of the grantor alone parties defendant. The ultimate remaindermen were not made defendants, nor are they before the court. Thus the case stands, with the executors and life-tenants alone before the court, on a proceeding to cancel a deed which by its terms includes a remainder. The defendants who were made parties (i. e. the children, who are named in the deed as life-tenants after the death of the grantor) answered, in effect admitting the allegations of the petition. Both plaintiffs and defendants allege that the deed was found among the papers of testator after his death, and that it had never been delivered to or accepted by any of his children. The plaintiffs and defendants agreed for the case to be submitted to the presiding judge without a jury, for decree at the first term. I find myself in a somewhat embarrassing position, with the case left for my determination, by agreement, without a jury, and with the very complex questions of law involved; and yet I believe it the duty of a judge who does not think he can render a valid decree of cancellation binding on all the parties in interest, and which, if granted, would be effectual to finally determine the status of the property, to so declare and to withhold the decree asked for. In doing this, it is without the slightest criticism on the parties to the case or the case itself. They could hardly themselves wish a decree which might hereafter be open to attack and possibly to be nullified. If I should be wrong in the view I entertain of the

law, it would be better to have an adjudication from the
Supreme Court declaring the law governing the case and
thus finally fixing the status of this valuable property, than
to pass a decree which the court believes to be open to
future attack and possibly upsetting. I therefore decline
to grant the decree prayed for, putting my decision ex-
pressly on legal grounds, as the case now stands; and will,
as briefly as I can, state my reasons therefor.

"Delivery is essential to the complete execution of a deed
and the conveyance of title thereby; but delivery or non-
delivery is a question of fact. It cannot be determined
finally or conclusively by either judge or jury, so as to
affect or determine the rights of parties in interest who are
not before the court. Record of a deed is presumptive,
but not conclusive, evidence of delivery. Here the deed
sought to be cancelled has been recorded. The first life-
tenant (the grantor who reserved a life-estate to himself, as
he could lawfully do in this State) was in possession of the
property. By the deed a life-estate was conveyed to his
children, and at their respective deaths the ultimate re-
mainder was left to "the legal heir or heirs of said deceased
party" (that is, in law, to his or her children or those
standing in the place of children), unless otherwise dis-
posed of by will. See Code, §2249; 61 *Ga.* 77 (*O'Byrne
et al.* v. *Feeley et al.*) It is evident to my mind, therefore,
that on a petition for cancellation to which the executors
and tenants for life are alone parties, it is wholly impossible
to frame a decree which will bind any person other than
themselves, or which would preclude the children of such
life-tenants, or descendants of deceased children, from
claiming an interest in the property hereafter; and if a
judgment or verdict should now be rendered seeking to
cancel the deed, it would in no way conclude these pos-
sible future litgants; but the question of delivery and the
passing of the title would stand open as a question of fact,
so far as they were concerned. So far as the children of

the grantor alone are concerned, as defendants, a decree would practically be useless. If they do not desire to claim under the deed, a mere relinquishment or like instrument would as effectually dispose of whatever rights they may have as any decree could; but if the decree should seek to go further and affect the interests of others, it could not successfully do so without having those others before the court. Whether this remainder is good or not I do not think can be determined, so as to bind the ultimate remaindermen, or persons described as remaindermen, without some representation of them. They do not claim under the will, so as to be represented by executors; certainly not in a proceeding by the executors to cancel the deed. Counsel stated frankly to the court, that some of the grantor's children had a child or children when the deed was made, and now have children; and some have not. Children have been born to some of the grantor's children since his death. One of his children is unmarried. The copy will exhibited shows at least one grandchild *in esse* when it was made. How can a valid binding decree be now framed which will finally settle this perplexing question? Certainly not with none of the remaindermen present. On delivery and record of the deed, see 91 *Ga.* 472; 17 *Ga.* 267; 73 *Ga.* 309 *et seq.* If the grantor reserved a life-estate to himself, would his having the deed, after record of it, be inconsistent with the ultimate remainder? Or would it enure to the benefit of his grandchildren as holding for remaindermen? Still further, the will recites this deed as a conveyance. The parties to the petition take under that will. Can they deny the conveyance? Can they claim under the will and repudiate the conveyance recited in it? See *Youngblood's* case, 74 *Ga.* 614; Smith *v.* Wait, 4 Barb. 28; Penrose *v.* Griffith, 4 Binney, 231. Does not a recital in a will have as much force as to those taking under the will as would a like recital in a deed? 69 *Ga.* 557; 39 *Ga.*

550. ˙The will recites the conveyance as a good deed.
How far this may have affected or entered into the whole
testamentary scheme of the testator, it is difficult to say.
It is urged by learned counsel that, under the doctrine of
representation, the remaindermen sought to be made by
the deed would be bound by the decree. If there was a
trustee in whom the fee was vested, or an executor holding
this property under a will creating the estate and under
which the remainderman would have to claim, all benefi-
ciaries might be represented by him as against a third
party, and contingent remaindermen, especially if not *in
esse*, might be bound if this representation of the property
was bound. But here there is no trustee; the instrument
in question is a deed, and under it there is and can be no
executor to represent this property for the final remainder-
men.˙ This is not a proceeding to sell and reinvest a trust
estate, and governed by the law of trusts; but a proceed-
ing to cancel and annul the whole instrument, whereby the
remainder which the deed sought to convey would be de-
stroyed. The plaintiffs are executors under a will which
recites and impliedly confirms the conveyance; the only
defendants made are the first life-tenants in remainder,
named in the deed, being children of the grantor and tes-
tator. They with their mother are heirs and legatees of
the ·testator (there being also some specific legacies).
Upon cancellation of the deed this property would become
a part of the estate, to be administered accordingly. The
cases in Georgia, so far as I have examined them, seem to
recognize this distinction between parties represented by
an executor or trustee and those not. 64 *Ga.* 670, 676,
677; 73 *Ga.* 215; 51 *Ga.* 139; as to bar of statute, 67 *Ga.*
264 (1)--(3). In *Schley's* case (70 *Ga.* 64), which at first
sight looks somewhat like this, there was a trustee and a
sale under order of the chancellor, and the rights of an
innocent purchaser for value had intervened. It was
held that contingent remaindermen must look to the  re-

investment, and could not recover the land sold. Numerous cases have been cited to me by counsel, all of which I cannot discuss. Only a few of those most relied on need be mentioned. 68 Am. Dec. 698: here there was a trust estate, and also statutes of Virginia as to selling estates in which minors were interested were relied on. In Mead v. Mitchell, 17 N. Y. 210, there was a trustee representing the estate; not only the trustee and life-tenant, but also all persons *in esse* who might take were parties; and finally the case was rested on a special statute of New York. In the discussion by the judge rendering the decision, it is said, that it has been held that it is sufficient to bring before the court the person entitled to the first estate of inheritance, with those claiming prior interest, omitting those who might claim in remainder or reversion after such vested estate of inheritance. If this be conceded as a correct statement, who is before the court here as one having an estate of inheritance under this deed? Not the executors; they claim nothing under it. Not the life-tenants; they have no estate of inheritance. The first estate of inheritance is in the grandchildren of the maker, under the terms of the deed. Pyke's case, 1 Raymond, 730, is cited. It merely holds, that if several remainders are limited in a deed, a verdict in favor of one may be given in evidence in favor of another. None of the facts are stated. Aside from the question of delivery, already considered, it is suggested that the terms of the deed would create an estate-tail, and therefore in this State a fee simple in the children. I think not. This conveyance does not fall within the rule in Wilde's case (6 Rep. 17), that a conveyance to A and his children, or issues (there being none *in esse*), creates an estate-tail, and therefore in Georgia a fee simple in the first taker. 3 *Ga.* 551 (*Wiley, Parish & Co.* v. *Smith*); 80 *Ga.* 391 (*Lofton* v. *Murchison et al.*) Here it is a life-estate with remainder over; not a conveyance to A and his children or issues,

but to A for life, with remainder to his heirs, which falls
directly within the terms of the code, §2249. See also
section 2248; 12 *Ga.* 357. The rule in Shelley's case is
wholly abolished in Georgia, so far as it affects limitations
over. As to the difference between a conveyance to one
and his heirs, and a conveyance to one with limitations
over to his heirs; and also, as to what is a limitation over,
see *Craig et al., ex'rs,* v. *Ambrose,* 80 *Ga.* 134; *Ewing
et al.* v. *Shropshire,* 80 *Ga.* 374, 376, *et seq.* Would
the deed create a perpetuity? Clearly not, I think.
There is no fee of inheritance with limitation over, but
(after a life-estate reserved to the maker) a mere life-
estate with remainder over; nor does the time for the
vesting of the estate fall within the prohibition against
perpetuities. All the limitations do not extend beyond
"any number of lives in being at the time when the limita-
tion commenced, and twenty-one years, and the usual pe-
riod of gestation added thereafter." Code, §2267. All
the children were *in esse,* and some of the grandchildren.
The grandchildren take at once on the death of the chil-
dren, subject to be defeated, if a will is made. The terms
of this section of the code seem to me to cover this point.
Would the defeating of or declining to accept by the chil-
dren defeat the ultimate remainder? Code, §2264 says
that, "No particular estate being necessary to sustain a re-
mainder under this code, the defeat of a particular estate
for any cause does not destroy the remainder." This
widely differs from the common law, and wholly abrogates
any defeat of remainders by destruction or defeat of the
particular estate; and correspondingly, if any doctrine of
representation or *quasi* representation by life-tenant of re-
maindermen, so far as to bind remaindermen by judg-
ment against life-tenant, was established, it does not exist
under the code of Georgia. In this State, "An absolute
estate may be created to commence in future, and the fee
may be in abeyance without detriment to the rights of the

subsequent remainders.   A fee may be limited upon a fee, either by deed or will, where the plain intention of the grantor requires it, and no other rule of law is violated thereby." Code, §2247.   What effect has the power of appointment or disposition by will by the children, provided for in the deed?   Does it destroy or render nugatory the remainder, or is it a mere possible mode of defeating the remainder, which would otherwise be effective? The section of the code just cited seems to answer this. The limitation over certainly is not stronger than limiting a fee upon a fee.   I don't think it goes as far as the code might permit.   Aside from that section of the code, where there is a fee simple with attempted limitation over in a case of non-disposition, it has been held void by many courts, as attempting to take away an incident of ownership; but where there is a life-estate in realty, it is not enlarged by a subsequent power of disposition by will; and a limitation over, in case the property is not disposed of by the life-tenant, may be sustained.   20 Am. & Eng. Encyc. of Law, word "Remainders" bottom pages, 857 subdivision (d) and note 4, 955 (f), 958 and note, and the many cases there cited, 960, 961.   See also, Gray on the Rule against Perpetuities, 112, 110, 258.   It may work considerable inconvenience to create only a life-estate with remainder over.   Most remainders do work inconveniences.   I have rarely known a remainder, especially if it be a contingent remainder or a remainder in which children born or to be born were to participate, which did not give inconvenience to somebody—sometimes great inconvenience.   But that does not affect the power of the owner nor the validity of the estate which he creates. The case of *Robinson* v. *Schly & Cooper*, 6 *Ga.* 515, 528, was decided before the code.   The real point decided was, that the instrument was a will, not a deed, as to certain property.   In the discussion, it is said by the judge delivering the opinion, that if an estate were given by deed

(the property there was money, bank stock, cattle, horses, furniture and real estate) to A and his heirs, and if he should die without leaving issue at his death, then as to so much of the estate as remained undisposed of by A to B the limitation over would be void for uncertainty, because of its uncertainty as to the property to go over. Here there is no uncertainty as to the property, no right of use, with an uncertain remnant; and if the point had been directly in issue there, it would not apply here. In this case the property is certain, and what has been said above applies. The ruling does not conflict with the principle already announced. Besides, the holding was as to a conveyance to one of his heirs, not to A for life, with remainder over. See also, even before the code, *Burton v. Black*, 30 *Ga.* 638. The petition prays that a copy of the entry of cancellation be entered across the face of the record of the deed. I do not know of any law which would authorize me to decree this. I have given considerable time and thought to this petition, and at the outset was not wholly free from doubt in considering it. If both plaintiffs and defendants are free from estoppel under the recital in the will, it might be possible to decree that, as between the life-tenants (the children) and the executors, the deed be cancelled, without attempting to affect the ultimate remaindermen. But this is not the decree asked for. As to necessary parties in such a case, see *Wyche et ux.* v. *Green et al.*, 32 *Ga.* 341; Dawson B. K. *v.* Harris *et al.*, 84 N. C. 206. As to the duty of a judge to use care in matters where minors may be involved, the Supreme Court have expressed themselves in *Deyton et al.* v. *Bell*, 81 *Ga.* 382, 383.

"I have written at length my views, that counsel might see, and the Supreme Court might know (should the case be carried there), just why a conscientious consideration of the case has led me to differ with counsel as to the law governing it, and to feel impelled not to enter a decree

declaring the deed cancelled and the property subject to be dealt with and bought and sold free from it, when that question, in my opinion, would not and could not be concluded by such a decree, with the parties before the court. I called the attention of counsel to the difficulty as to parties, but they were unable to agree with my view of the law, and thought a final decree could be rendered with the parties present, which would conclude any person who might attempt to set up a claim under the deed."

*Julius L. Brown*, for plaintiffs.
*Bishop & Andrews*, for defendants.

SIMMONS, Chief Justice.

Under the terms of the deed, we think a vested estate was created in the maker's grandchildren, subject to be defeated at the will of his children, the life-tenants. This being so, they had a right to be represented upon the question whether there was a delivery of the deed or not. If the proceeding was maintainable at all, the grandchildren in life at the time it was filed were indispensable parties. Ample authority in support of these conclusions will be found referred to in the opinion of the learned judge of the court below, which is set out in the report which precedes this opinion.                    *Judgment affirmed.*