## BOND *v.* HUNT.

1. All persons who are directly interested in the event of the suit should be made parties.

2. The verdict for the prevailing party in this case was unauthorized, the evidence demanding a verdict for the other party.

FEBRUARY 18, 1911.

Equitable petition.   Before Judge Meadow.   Elbert superior court.   February 3, 1910.

*J. N. Worley,* for plaintiff in error.   *Proffitt & Brown,* contra.

BECK, J.· Miss Laura Hunt brought an equitable petition for the recovery of land against Mrs. Henrietta S. Bond, who was in possession of the property. Petitioner claimed that she was the owner in fee of the property and had a perfect equity thereto because of the following facts: She is the daughter of Willis Hunt, deceased, who died testate in the year 1872, devising a certain tract of land to his wife for life, with remainder in fee simple to his children, and directing that the land after the death of his wife should be divided, and that the parcels of land into which it was divided should be distributed among his children by lot. This direction was duly followed, and the tract of land numbered 4 (the property in controversy) was allotted to B. M. T. Hunt, one of the petitioner's brothers. The latter was an idiot, incapable of caring for himself, and requiring constant care and nursing. In consequence of the condition of the unfortunate brother it was agreed between petitioner and the other brothers and sisters that petitioner was to take charge of and care for the idiot brother during his life, and in consideration of the services so undertaken she should have the parcel of land which had been allotted to her afflicted brother. She faithfully performed the duties undertaken. On the death of B. M. T. Hunt petitioner inherited a one-fifth interest in said land, and the other four-fifths descended to the brothers and sisters of the petitioner, and, under the agreement above referred to, their title inured to petitioner's benefit, as was conceded by the brothers and sisters, thus giving to petitioner a perfect equity in the land. When petitioner entered upon the performance of her agreement to care for B. M. T. Hunt she took possession of the land under the contract, and remained in possession continuously, peaceably, and notoriously until the first day of January, 1907, when the defendant took possession under a pretended purchase from one Susan Hunt, who had never had either possession or title to the property or any claim of title whatever. After the death of B. M. T. Hunt, S. J. W. Hunt, another brother of petitioner, became administrator of the estate of the deceased brother, and informed petitioner that in order to perfect her title and protect said land for her it was necessary for him to administer on the estate of the dead brother and to sell the land and have it bid in for her, and informed petitioner that he had engaged one J. W. Norman to bid the land off at the sale for petitioner, and subsequently to the sale told her that Norman had bid

the land off for her and that her title was regular; and petitioner thought she had a deed to the land, but has been recently informed that the administrator's deed had been made to J. W. Norman, and that he had never executed a deed to petitioner. Norman told petitioner that he had bid the land off for her and that it was her land; and since then the defendant had often spoken of the land as her property. It was further alleged that the defendant does not hold under any conveyance from J. W. Norman or the executors of his estate, but that the executors of Norman transferred to the defendant an indebtedness against Susan F. Hunt, the wife of S. J. W. Hunt, and to settle the same defendant took a deed from Susan Hunt to the lot of land. J. W. Norman did not pay the administrator anything for the land, and had possession of the same. In the petition it is also contended that as Henrietta S. Bond does not hold under J. W. Norman, but holds under Susan F. Hunt, and as no one claims under said administrator's deed, it is unnecessary to ask for a decree of cancellation of the same.

The deed from the administrator of B. M. T. Hunt to Norman was introduced in evidence by the defendant, and a deed from the heirs at law of Norman to the defendant was in evidence. On the trial of the case the jury returned a verdict in favor of the plaintiff. A motion for a new trial made by the defendant was overruled, and she excepted.

1. During the trial the defendant submitted a motion in writing to have the executors of J. W. Norman made parties to the cause. This motion the court overruled, and the defendant excepted. This motion should have been sustained. It is clear from the allegations of the petition, considered in connection with the evidence introduced by the plaintiff, that an attack upon the deed from the administrator of B. M. T. Hunt to J. W. Norman was being made. The deed from B. M. T. Hunt's administrator to Norman and from Norman's heirs to the defendant, together with the allegations in the petition, showed a legal title to the property in the defendant, who was in possession of the land at the time this suit was brought. The plaintiff was not entitled to a verdict unless she could show that the administrator's deed to J. W. Norman was for some cause invalid and inoperative; and this showing she was not entitled to make in a suit against the grantee in a deed from Norman's heirs, in the absence of the representatives of Norman's estate as parties to the

action. "Where equitable proceedings are instituted which pray for relief touching rights and interests of the petitioners in certain specific property, and the petition discloses the fact that others are directly interested in the property, who are not made parties to the proceedings, and whose interests would be affected by a grant of the relief sought, such other persons are proper and necessary parties to the action." *Henderson* v. *Napier,* 107 *Ga.* 342 (33 S. E. 433). All persons who are directly or consequentially interested in the event of the suit should be made parties. *Blaisdell* v. *Bohr,* 68 *Ga.* 56.

2. Another sufficient reason for remanding this case for another trial is, that the verdict was without evidence to support it. The uncontroverted evidence in the case shows that the petitioner consented to a sale of the land in controversy by the administrator of her deceased brother. She did not, when it was proposed to her that the land should be sold at the administrator's sale, assert a perfect equity in order to prevent the sale; but in her testimony, as well as that of S. J. W. Hunt, one of the witnesses introduced by her, the reason for a failure on her part to assert title to the property is clearly revealed. It appears that there was an outstanding fi. fa. against herself and S. J. W. Hunt, and the sale of the land by the administrator was agreed upon as the best plan for perfecting title in herself and preventing the subjection of the property to the claim of the execution creditor. The plaintiff herself testified: "The son of J. W. Norman did the actual bidding at the sale. It was not paid for, as it was understood that there was no money to be passed but the land was to be bought in for me in order to save it from the execution. Nobody's money paid for it; no money was paid. . . I do not know why he did not make me a deed to the land; they told me that it was all right and had been fixed up as agreed. I thought they were doing it right, as I had perfect faith in them. . . I did not understand the nature of the transaction, but Mr. Norman [was] to let it sell and buy it in, and that would save the land for me from the Maxwell fi. fa. . . The agreement was, he [Norman] was to bid off the land and that no money would have to pass. I did not understand just what the process was to be, but this was done in order that the land could be saved for me from this execution. . . This property was levied on as the property of Sing [S. J. W.] Hunt to satisfy a debt or fi. fa. in favor of Will Maxwell, and this

administration was had for the purpose of saving the land for me as my property." Other uncontroverted testimony coming from the witnesses for the plaintiff, considered in connection with that which we have quoted, shows beyond doubt that the purpose of the plaintiff in this case was to permit the land as to which she claimed a perfect equity to be sold at an administrator's sale for the purpose of preventing a creditor from enforcing an execution against her and another. The law condemns such a scheme as fraudulent. The deed made by the administrator to the purchaser was tainted with a fraud, to which the plaintiff here was a party; and the law will not aid the plaintiff by annulling and rendering inoperative such a deed. Although at the date of the administrator's sale the plaintiff may have had a perfect equity to the land, she can not now, after having consented to a sale of the land by the administrator for the purpose of giving effect to a fraudulent scheme, ignore a deed which was an essential part of the scheme and has become a link in the chain of title now asserted by the defendant, who is in possession of the land, and resort to an equitable title, however perfect it may have been at the time she became a party to a fraud conceived and carried out to defeat the claim of a judgment creditor. If the purchaser at the administrator's sale were himself in possession of the land under the facts of this case showing his deed to be fraudulent, the court would leave him in possession as against the demands of this plaintiff; and a purchaser from the heirs of the grantee in the administrator's deed can not be in a worse position than the purchaser himself at the administrator's sale would have been were he in possession of the land and his right of possession assailed in such an action as the present one.

Under the foregoing decision it is unnecessary to deal with the special assignments of error, although, in view of what we have said above, they point out various inapt and confusing statements of law applicable to the issues made by the pleadings and the evidence; for, under the evidence in the case, the only verdict which could be properly rendered is one for the defendant.

*Judgment reversed. All the Justices concur.*