STEADHAM *v.* COBB *et al.*

No. 11977. MARCH 17, 1938.
ADHERED TO ON REHEARING, MARCH 26, 1938.

*S. Holderness, S. Holderness Jr.,* and *J. L. Smith,* for plaintiff in error.

*Boykin & Boykin, W. R. Robinson,* and *Henry H. Cobb,* contra.

BELL, Justice. The court overruled demurrers filed by the defendant, sustained grounds of special demurrer filed by the plaintiffs, directed a verdict in favor of the plaintiffs, and overruled the defendant's motion for a new trial. The defendant excepted. Numerous questions were raised, but the principal questions are whether an amendment to the petition was objectionable as attempting to add a new and distinct cause of action, and whether an amendment filed by the defendant in which he sought reformation of a deed was subject to grounds of special demurrer filed by the plaintiffs. Lot 185 in the 6th district of Carroll County lies adjacent to and north of lot 168. The original dividing line between these two lots is twice intersected by the Southern Railroad. This railroad, running west, enters lot 185 some distance north of the southeastern corner of that lot and the northeastern corner of lot 168. It runs thence in a southwesterly direction, crossing the original dividing line between these two lots, after which it runs westerly, and then northwesterly, again traversing the original dividing line, and passing through the southwest portion of lot 185. Thus a portion of lot 168 lies between the railroad and the original dividing line. This tract contains about 15 or 20 acres, and is the subject-matter of the present litigation. The railroad passes through a portion of the north third of lot 168, and in one of the deeds hereinafter mentioned this tract was described as being bounded "on the north by the Southern Railroad," instead of by the original lot line. Lot 185 and the north third of lot 168 were the property of W. W. Cobb, a resident of Carroll County, at the time of his death in 1864. W. W. Cobb left a will executed in 1862, by which he bequeathed all of his property to his wife, Sarah Jane, "for her and children's support, maintenance, and education of the children," and providing that no part of the land was to be sold unless the wife should marry again; in that event an equal division to be made between the wife and children, share and share alike. The wife was nominated as executrix, and probated the will on November 7, 1864. She died in 1909. W. W. Cobb left three children, I. O. Cobb, E. H. Cobb, and John Cobb. John Cobb died single, several years after the death of his father, and

was survived by his mother and two brothers. I. O. Cobb died in 1907, survived by the plaintiffs in this case, namely; his widow, Mrs. E. A. Cobb, and five children, Lewis C. Cobb, H. H. Cobb, W. Frank Cobb, I. O. Cobb Jr., and Mrs. Lucy Cobb Robinson. These facts, which are gleaned from the entire record, appear to be undisputed, and are stated at the outset, to aid in a more ready understanding of the following: In 1927 E. H. Cobb, on application, was appointed by the ordinary of Carroll County as administrator of the estate of W. W. Cobb. At the November term, 1927, he was granted leave to sell the land referred to above, as the property of the estate, and on January 20, 1928, after advertising, he sold and conveyed to John A. Steadham a tract described as the "north third of lot of land No. 168, containing 66-2/3 acres, more or less, being in the sixth district of Carroll County, Ga., bounded on the east by J. F. Brooks, on the south by the American Telephone line, on the west by F. L. Davis, on the north by Southern Railroad." On March 5, 1930, John A. Stedham by warranty deed conveyed to his brother, W. L. Stedham, several tracts of land including "sixty-six acres north third of lot No. 168." In May, 1934, W. L. Stedham presented to processioners an application reciting that he owned 66 acres, more or less, the line of which he desired to have surveyed and marked anew. He named as the owners of adjoining lands, "Mrs. E. A. Cobb, Estate Lewis Cobb and Frank Cobb, agents." Processioners acting under this application, after surveying the land, made a return which, with a map, purported to locate the original dividing line between lots 168 and 185, and to designate it as the northern boundary of the north one-third of lot 168. On July 21, 1934, Lewis Cobb and Frank Cobb filed a protest.

On July 23, Mrs. E. A. Cobb, Lewis C. Cobb, H. H. Cobb, W. Frank Cobb, I. O. Cobb, and Mrs. Lucy Cobb Robinson filed an equitable petition in the superior court of Carroll County, seeking to establish the Southern Railroad as the northern boundary between land claimed by themselves and the tract now claimed by W. L. Steadham, and prayed that the processioning case be dismissed for reasons stated in the petition. By an order of the superior court passed on October 5, 1934, that case and the equitable petition were, by consent of the parties, consolidated and ordered to proceed as one case. On October 10, W. L. Steadham filed an

answer to the *original* equitable petition. The plaintiffs amended their petition by alleging that they were the owners not only of lot of land 185, but also of the north one-third of lot of land 168, and praying as follows: that the deed of the administrator of W. W. Cobb to John A. Steadham and the deed from John A. Steadham to W. L. Steadham be declared null and void as clouds upon the title of the plaintiffs; that the title of the land now occupied by W. L. Steadham, including the north one-third of lot 168 be decreed in plaintiffs; and for other and general relief. This amendment alleged substantially the following facts: The petitioners are the sole heirs at law of I. O. Cobb, who died in 1907, Mrs. E. A. Cobb being his widow, and the others being his children. I. O. Cobb died seized of all of the lands described above, subject only to the life-estate of his mother, Mrs. Sarah Jane Cobb, who survived him and who died in the year 1909. At her death the fee-simple title to the lands vested in petitioners as the sole heirs at law of I. O. Cobb, deceased. Petitioners in their amendment referred to the will of W. W. Cobb, the contents of which have been stated above. They alleged that John Cobb, one of the children of W. W. Cobb, died in 1870, unmarried, and that E. H. Cobb, the only other child of W. W. Cobb, sold his remainder interest in his father's estate to I. O. Cobb during or about the year 1890, and moved away from the family homestead. I. O. Cobb died intestate, and there was never any administration of his estate. Until his death in 1907 he remained in possession of the lands described, and the plaintiffs as his sole heirs at law have continued in possession; so that the plaintiffs and their predecessors in title have been in peaceable possession of the land for more than sixty years. They continued in such possession until 1927, when E. H. Cobb, brother of I. O. Cobb, deceased, obtained letters of administration of the estate of W. W. Cobb and sold part of the land to John A. Steadham, as stated. The amendment then attacked the administration of E. H. Cobb, by alleging that the administration was procured by the defendant W. L. Steadham, and his brother John A. Steadham, and that the property sold by the administrator did not belong to the estate of W. W. Cobb; and by alleging other facts which need not be detailed in this connection. In their original petition the plaintiffs alleged that they were the owners of lot 185, and sought to establish the line between that

tract and the land claimed by W. L. Steadham as being the Southern Railroad. They did not otherwise question the title of W. L. Steadham to the north one-third of lot 168.

The defendant demurred generally and specially to the amendment and to the petition as amended, one ground of demurrer being that the amendment attempted to add a new and distinct cause of action. The court overruled these demurrers, and the defendant excepted pendente lite. The defendant also filed an answer in which he denied substantially all of the allegations of the amendment, and then alleged the following: The administration of the estate of W. W. Cobb by E. H. Cobb was proper and legal. E. H. Cobb applied for appointment as administrator at the instance and suggestion of the plaintiffs. The administrator obtained an order to sell the north third of lot of land 168, the land was so advertised in the official organ of Carroll County, and was exposed for sale and sold to John A. Steadham "as the north third" of this lot. At the same time and place, lot of land No. 185 was exposed for sale by the administrator, and this lot was bid in by the plaintiffs, and the administrator, E. H. Cobb, executed to them a deed conveying lot of land 185. After the purchase of the north third of lot 168, John A. Steadham, the purchaser, took possession of said land. In January, 1928, the administrator made a deed to him for the amount of his bid, $1200. In February, 1929, the plaintiffs sold to John A. Steadham lot of land No. 185, and executed to Steadham a warranty deed. Steadham paid the plaintiffs $2500 in cash, and executed his note and a security deed for the balance of the purchase-money. John A. Steadham then entered upon and took possession of all of the land sold at the administrator's sale. In 1930 John A. Steadham, while in possession of all of the lands formerly belonging to the W. W. Cobb estate, sold the north one-third of lot 168 to W. L. Steadham by a warranty deed. This deed described the land simply as the north third of lot No. 168, without designating the north or any other boundary.. Soon after the defendant took possession of this tract, the plaintiffs sued to judgment the note which they held against John A. Steadham, and had lot 185 sold at a sheriff's sale, at which the plaintiffs became the purchasers. The plaintiffs are estopped from denying the legality of the administrator's sale, "they having (a) procured E. H. Cobb to administer on said

property," (b) participated in the sale and purchase of said estate by said administrator, in accepting the deed to lot No. 185, and (c) accepted the proceeds of the sale of. the north third of lot of land No. 168. Neither the defendant nor his brother had anything to do with the act of E. H. Cobb in applying for administration of the estate of W. W. Cobb.

Paragraphs 13 and 14 of the answer were as follows: "13. Defendant shows further: that the said E. H. Cobb, administrator of the estate of W. W. Cobb, made application for leave to sell the north third of lot 168 in the sixth district in said county, and that the order was granted, giving him leave to sell the north third of said lot 168; that the. said E. H. Cobb then advertised the north third of lot 168 in said county; that the same was sold according to the order of the ordinary granting leave to sell; that the advertisement was run in the legal organ of said county, by said administrator, and J. A. Steadham purchased said tract as advertised and sold by said administrator. (a) That the said J. A. Steadham paid $600 cash and executed his note for the balance of the purchase-price, to wit, $600, together with interest on said note for a period of twelve months, making the face of the note for $648. That on or about the 28th day of January, 1928, the defendant, W. L. Steadham, paid to the administrator the balance of the purchase-price of said land, and said note was indorsed and .delivered to him; and said administrator executed a deed to J. A. Steadham to the north third of lot of land No. 168 in the 6th district, and by mistake fixed the northern boundary of said lot as the Southern Railroad, when in fact and truth the entire north third of said lot was advertised and sold by said administrator, which would be bounded on the north by the original north line of said lot, and running down the east and west original lines of said lot a distance sufficient to include one-third of said lot. That the said J. A. Steadham, at the time of the execution of the deed, had been injured by a fall from a housetop, and was in critical condition, and did not discover the mistake in said deed until after the said J. A. Steadham had purchased lot of land No. 185 in the 6th district, being the balance of the W. W. Cobb estate that was sold by the said administrator. (b) That at the time of discovering the mistake in the deed, J. A. Steadham was in possession and owned the entire W. W. Cobb estate. He then sold to defendant, W. L.

Steadham, the north third of lot No. 168 in the 6th district, and made the deed, in accordance with the purchase at the administrator's sale, to the north third of said lot. (c) Defendant alleges and shows that in drawing the deed fixing the northern boundary of said tract as the Southern Railroad was a mistake and inadvertently made, and the effect of which was to limit the land sold and conveyed. Copies of leave to sell, advertisement, and administrator's deed are hereto attached, marked exhibits A, B, C, respectively, and made a part of this defense. 14. Defendant shows that the administrator of the W. W. Cobb estate is dead, and that now there is no administration upon the same, but all persons interested are parties to this suit and the relief can be granted without an administrator being a party." The defendant prayed that the original north line of lot 168 be decreed to be the line between the property of this defendant and the property of the plaintiffs, and that the deed from E. H. Cobb, administrator, to John A. Steadham to the north third of lot 168 "be reformed and corrected to include all the land advertised and sold by said administrator." Still other allegations were made. To this amendment the plaintiffs filed a demurrer, several of the grounds of which the court sustained, and the defendant excepted pendente lite. So far as necessary, the grounds of this demurrer and the related portions of the defendant's amendment will be stated in the opinion. For convenience, the amendment will generally be referred to hereafter simply as the answer or as the cross-action.

At the conclusion of the evidence on the trial, the judge directed a verdict in favor of the plaintiffs. The defendant made a motion for a new trial on the general grounds, which he later amended by adding several special grounds. In the amendment to the motion he assigned error on the direction of the verdict and on the exclusion of testimony and documentary evidence. The judge overruled the motion for new trial, and the defendant excepted, assigning error on that judgment and on all of his exceptions pendente lite.

■ There was no demurrer to the original petition, by which the plaintiffs sought a decree establishing the Southern Railroad as the dividing line between land claimed by them on the north and the land claimed by the defendant on the south, and in which they also prayed for a dismissal of the processioning case previously instituted by the defendant. The plaintiffs owned lot of land 185

on the north, and the defendant claimed the north one-third of lot 168 on the south. The plaintiffs contended that by agreement between the administrator and John A. Steadham the railroad instead of the original lot line had been made the dividing line. The railroad intersects the original dividing line in two places, dipping, as it were, into the north one-third of lot of land 168. Between the railroad and the original dividing line is a tract of 15 or 20 acres. The plaintiffs by *amendment* alleged that they owned all of lot 185 and also the entire north one-third of lot 168, and prayed that title be decreed in them accordingly. The defendant demurred to this amendment, upon the ground, among others, that it attempted to add a new and distinct cause of action. We are of the opinion that this amendment *did* attempt to add a new and distinct cause of action, and therefore that the court erred in overruling the demurrer so far as based upon this ground. The purport of the original petition was to settle a disputed issue as to a boundary line. The amendment in seeking to recover the entire tract claimed by the defendant was not germane to anything contained in the original petition. An amendment must be germane to the facts relied on in the original petition as the cause of action. *Gunn* v. *Head,* 116 *Ga.* 325 (42 S. E. 343). In *Rogers* v. *Rogers,* 183 *Ga.* 131 (187 S. E. 633), it was held: "While a court of equity, when it has all the necessary parties before it and has once taken jurisdiction of a particular subject-matter, will ordinarily proceed to do complete justice, and finally administer the rights of each of the respective parties, it will not extend its jurisdiction in such manner as to draw to itself collateral matters not appropriately comprehended within the scope of the original proceedings under which, in the first instance, it assumed jursidiction." See also *Vason* v. *Clanton,* 102 *Ga.* 540 (29 S. E. 456). The defendants in error, plaintiffs in the court below, call attention to the fact that at the conclusion of the evidence they abandoned "recovery of anything south of the Southern Railroad," and contend that in view of this fact any error in overruling the demurrer to their amendment was harmless. We might, perhaps, agree with this contention if the record did not show other cause for reversal. We have concluded, however, that the judgment must be reversed upon other grounds to be stated later, and in the circumstances have deemed it proper to rule upon the assignment of error in re-

gard to this amendment. Whether, if no other cause for a reversal appeared, the judgment should be reversed on this ground is not decided.

Since the amendment should have been stricken as a whole because it attempted to add a new and distinct cause of action, it is unnecessary to pass upon the other grounds of demurrer, either general or special, which were interposed against it by the defendant. While, as stated, there was no demurrer to the original petition, the defendant did demur to the *petition as amended*. The grounds of this demurrer, however, complained only because of the condition of the petition in its amended form; and since the amendment must be stricken in its entirety, the grounds of such demurrer to the petition as amended need not be considered.

■ The dismissal of the plaintiffs' amendment, however, will not result in a dismissal of the defendant's answer thereto, except as to purely defensive matter. Code, § 3-510; *Jones* v. *Thacker*, 61 *Ga.* 329 (2) ; *Ray* v. *Home & Foreign Investment &c. Co.*, 106 *Ga.* 492 (4) (32 S. E. 603). The answer contained matter in the nature of a cross-action wherein the defendant sought a decree of reformation, and this part of the answer must now be considered. The desired reformation relates to the deed from E. H. Cobb, administrator, to John A. Steadham, purporting to convey land described as the north one-third of lot of land 168, bounded "on the north by the Southern Railroad." The answer alleged, in effect, that the true line was the dividing line between lots 168 and 185, and not the Southern Railroad as stated in this deed. It alleged that the administrator made application for leave to sell the north third, that an order was granted accordingly, and that the land was so advertised, sold, and purchased. The answer further alleged that the administrator executed to John A. Steadham a deed to the north third, but "by mistake fixed the northern boundary as the Southern Railroad." John A. Steadham attended the sale and bid on the land and paid therefor the full market value. He went into possession of the land and some time later the administrator executed a deed to him. At that time, he had been injured by a fall from a housetop and was in a critical condition, and did not discover the mistake in the deed until he had purchased lot 185 from the plaintiffs, which the answer shows was in February, 1929. The answer further alleged "that in drawing the deed,

fixing the northern boundary of said tract as the Southern Railroad was a mistake and inadvertently made, and the effect of which was to limit the land sold and conveyed," and "that the administrator of the W. W. Cobb estate is dead, and that now there is no administration upon the same, but all parties interested are parties to this suit, and the relief can be granted without an administrator being a party."

If there are sufficient parties, and pretermitting that question for the moment, we think the answer stated a cause of action for reformation. It sufficiently shows a mutual mistake of fact, and this is a ground of reformation. Code, § 37-207. It does not contain a mere conclusion of the pleader in regard to the alleged mistake, or as to the mutuality of it. The fact that the complainant does not in express terms allege that the instrument was erroneously executed through mutual mistake does not render it insufficient in law, if it alleges facts from which such a conclusion is reasonably deducible. 23 R. C. L. 361, § 58. Nor does the answer show such negligence on the part of John A. Steadham, the purchaser, as to prevent reformation. In *Green* v. *Johnson,* 153 *Ga.* 738 (3-5) (113 S. E. 402), it was held: "Equity will not lend its aid to reform a written contract because of mistake as to its contents on the part of a complaining party who was able to read, and fraud of the other party which consisted only in making false representations as to such contents, on which the complaining party relied as true because of confidence in the party making them, no confidential relation existing between the parties, and no sufficient excuse appearing why the complaining party did not read the instrument; but this principle does not apply to actions for the reformation of instruments which, by mutual mistake, do not evidence the true agreement of the parties. . . In all cases where the form of the conveyance or instrument is, by mutual mistake, contrary to the intention of the parties in their contract, equity will interfere to make it conform thereto. . . Reformation may be granted even in cases of negligence by the party complaining, if it appear that the other party has not been prejudiced thereby." See also *Jordy* v. *Dunlevie,* 139 *Ga.* 325 (77 S. E. 162); *Gibson* v. *Alford,* 161 *Ga.* 672 (5) (132 S. E. 442); *Eliopolo* v. *Eicholz,* 161 *Ga.* 823 (2) (supra); *Whittle* v. *Nottingham,* 164 *Ga.* 155 (5) (138 S. E. 62); *Dollar* v. *Fred W. Amend Co.,* 184 *Ga.* 432, 438

(191 S. E. 696). In *Barnes* v. *Peterson,* 136 *Ga.* 264 (71 S. E. 163), it was said: "The proper inquiry in all applications for relief against mistake is, does the instrument contain the true agreement of the parties? Is it what the parties intended it should be?" Nor does the answer affirmatively show such laches as to bar the relief sought. Laches would be a matter for defense, and would be determined by the evidence, unless facts constituting such defense affirmatively appear from the allegations of the cross-action. *Long* v. *Gilbert,* 133 *Ga.* 691 (4) (66 S. E. 894) ; *Hunnicutt* v. *Archer,* 163 *Ga.* 868 (137 S. E. 253).

We consider next the question of parties. "Equity will grant relief as between the original parties or their privies in law, in fact, or in estate, except bona fide purchasers for value without notice." Code, § 37-213; *Wyche* v. *Green,* 11 *Ga.* 159 (9) ; *Wall* v. *Arrington,* 13 *Ga.* 88 (3). If there was a mutual mistake of fact as between the administrator and John A. Steadham, and John A. Steadham thereafter sold and conveyed all of his interest to W. L. Steadham, the latter will succeed to any right of the former to the relief of reformation. Jones *v.* McNealy, 139 Ala. 378 (35 So. 1022, 101 Am. St. R. 38) ; 23 R. C. L. 338, § 31. Did the answer or cross-action filed by W. L. Steadham proceed against sufficient or essential parties? In *Roberts* v. *Moore,* 136 *Ga.* 790 (3) (72 S. E. 239), it was held, that, the grantor not being a party to the action, a plea for reformation was not good in law. But in the present case the grantor was an administrator. The answer alleges that the administrator has died, and there is now no administration upon the estate of W. W. Cobb, and that all persons interested are parties to the suit. In *Sweatman* v. *Dailey,* 162 *Ga.* 295 (133 S. E. 257), it was held: "Where the original vendor of the land died intestate and there was no administrator or personal representative of the decedent at the time the suit was brought, a suit could be maintained against the sole heir at law of the intestate, as he was apparently the only party who was interested in resisting the suit." See also *Belt* v. *Lazenby,* 126 *Ga.* 767 (5) (56 S. E. 81). From the allegations contained in the answer or cross-action it appeared that the plaintiffs were claiming as heirs of the estate represented by the administrator, and thus that they were in such privity in estate with him as to enable the defendant to proceed for reformation against them,

where the administrator had died and there was no further administration of the estate. *Phillips* v. *Roquemore,* 96 *Ga.* 719, 726 (23 S. E. 855).

Was the answer fatally defective because John A. Steadham, the grantee in the administrator's deed, was not made a party defendant? Generally, all persons interested in the litigation should be parties to proceedings for equitable relief. Code, § 37-1004. All persons who are directly or consequentially interested should be made parties. *Wyche* v. *Green,* 32 *Ga.* 341; *Bond* v. *Hunt,* 135 *Ga.* 733 (70 S. E. 572); *Roberts* v. *Moore,* supra. While the absence of an essential party would constitute a fatal defect, this would not be true as to one who would have been a proper party, but whose presence in the case was not *essential.* The determination of this question will depend upon whether the absent party would have been adversely or prejudicially affected by the judgment. *Railroad Commission* v. *Palmer Hardware Co.,* 124 *Ga.* 633, 642 (53 S. E. 193); *First National Bank of Sparta* v. *Wiley,* 150 *Ga.* 759, 764 (105 S. E. 308); *Brown* v. *Brown,* 97 *Ga.* 531 (25 S. E. 353, 33 L. R. A. 816); General Investment Co. *v.* Lake Shore Ry. Co., 260 U. S. 261, 285 (43 Sup. Ct. 106, 67 L. ed. 244); Davis *v.* Rogers, 33 Me. 222; Pierce *v.* Faunce, 47 Me. 507; Cramer *v.* Benton, 60 Barb. 216; Horner *v.* Bramwell, 23 Colo. 238 (47 Pac. 462); Dorman *v.* Brereton, 140 Ill. 153 (29 N. E. 703). In the instant case John A. Steadham, grantee in the administrator's deed, would not be injured by a decree of reformation. On the contrary, if he conveyed the entire north third of the lot to the defendant with a warranty of title, such a decree would redound to his benefit, since it would tend to relieve him from liability on his warranty. A failure to join a person who may be a proper but not a necessary party does not absolutely defeat an action for reformation. See Moore *v.* Moore, 151 N. C. 555 (66 S. E. 598); Lockwood *v.* White, 65 Vt. 466 (26 Atl. 639); Indian River Mfg. Co. *v.* Wooten, 48 Fla. 278 (37 So. 731); 23 R. C. L. 358, § 56; 53 C. J. 1006-1011, §§ 158-163. There was no demurrer on the ground that John A. Steadham was not made a party; and since he was not an essential party, the cross-action does not fail as a matter of law because of his absence as a party. It is noticed that the deed from John A. Steadham to W. L. Steadham purported to convey "66 acres north third of lot No. 168," with-

out stating the district. The defendant alleged in effect, however, that he had purchased from John A. Steadham the land in controversy. The original petition referred to John A. Steadham as the defendant's predecessor in title. None of the parties have raised any question as to the sufficiency of this deed, or as to the right of W. L. Steadham as the successor in title and interest of John A. Steadham. In the circumstances we will not hold the answer insufficient for defect in the deed, but will leave this question open without prejudice to either party.

In view of the contentions of the respective parties, some further comment seems to be necessary on the question of reformation. The north third of lot of land 168 was, of course, not conveyed to the plaintiffs by the deed from the administrator conveying to them lot of land 185. If there was no mistake in the deed from the administrator to John A. Steadham, the 15 or 20 acres in lot 168, situated between the Southern Railroad and the original dividing line between the lots, appears to be still either a part of the estate of W. W. Cobb or a part of the estate of I. O. Cobb. The plaintiffs contend that at the time of this administration all of this property, including the 15 or 20 acres, had ceased to be a part of the estate of W. W. Cobb, had become a part of the estate of I. O. Cobb, and had descended to the plaintiffs as his heirs at law. They contend that the land was thus not a part of the estate of W. W. Cobb at the time of the administration. If this contention be correct, the administrator's deed would not be subject to reformation as against them, for the reason that there would be no privity as between them and the administrator. *Garlington* v. *Blount,* 146 *Ga.* 527 (91 S. E. 553). They alleged these facts in the amendment to their petition, but, as shown above, the allegations should have been stricken because not germane to the original action. They might be germane, however, as a defense to the cross-action in which the relief of reformation was sought as against them. *Oliver* v. *Powell,* 114 *Ga.* 592 (40 S. E. 826). As to whether a replication would be required, see *Beard* v. *White,* 120 *Ga.* 1018 (48 S. E. 400). Whether or not privity in estate *actually* existed as between the plaintiffs and the administrator, the allegations contained in the cross-action, which must be taken as true on demurrer, were sufficient to show such privity. The answer alleged, in effect, that they received a portion of the proceeds of the

sale which the administrator made to John A. Steadham, and that they had held the land as part of the W. W. Cobb estate; also, that they themselves had purchased lot 185 at the same administrator's sale. See, in this connection, *Medlin* v. *Downing Lumber Co.*, 128 *Ga.* 115 (57 S. E. 232). If, at the time of the administrator's sale, John A. Steadham and the administrator, or either of them, thought that no part of lot 168 was north of the railroad, or if it was their real intention to convey and accept only the portion of the north third lying south of the railroad, then the deed conveyed the property according to the intention of the parties, and there could be no reformation; and this would be true despite the fact that the actual northern boundary of the entire north one-third is the original lot line. In other words, whether the railroad did or did not coincide with the original lot line, the deed could not be so reformed as to convey to the grantee *more land than was intended.* *Langston* v. *Langston,* 147 *Ga.* 318 (93 S. E. 892) ; 53 C. J. 928-932, §§ 42-50. On this question the price and values might be considered. Unless the deed is reformed, the defendant can not claim any portion of lot 168 north of the Southern Railway. *Carswell* v. *Sanders,* 182 *Ga.* 251 (185 S. E. 282). While the answer was not stricken in its entirety as on general demurrer, substantially all of the allegations pertaining to the relief of reformation were stricken on special demurrer; and for this reason it has been necessary to consider the answer in practically the same manner as if the court had sustained a general demurrer thereto.

■ Having concluded that the answer stated by way of cross-action a sufficient case for reformation, we will consider next the assignments of error on the judgment sustaining the special demurrers thereto. Paragraph 6 of the answer alleged that in March, 1930, John A. Steadham, while in possession of all of the lands of the W. W. Cobb estate, being the north third of lot 168 and all of lot 185, sold and conveyed to the defendant such north third by warranty deed, a copy of which *was attached,* and that the defendant took possession of this tract. On special demurrer these allegations were stricken on the grounds that the contents of the deed were not stated, and that the part the defendant actually took possession of was not shown. There was no merit in these grounds of demurrer, and the court erred in striking them (plaintiffs' demurrer, paragraph 4). Paragraph 10 of the answer alleged: "De-

fendant further shows, as before stated, John A. Steadham purchased at said administrator's sale the north third of lot of land No. 168, and that the administrator sold the north third of lot of land No. 168, and he was without authority to change the lines or to make any agreement with reference to the boundary of said land, other than that granted him in the order of leave to sell and in the advertisement of said property for sale. And that if the said administrator by mistake or otherwise, executed a deed to John A. Steadham, fixing the boundary of the north third of lot of land No. 168 other than the original north line of said lot, he was without authority to do so. But that this defendant's deed was made correct when sold to him by John A. Steadham, who was in possession of all the lands included in the W. W. Cobb estate, said deed conveying this defendant the north third of lot of land No. 168, which description would include all the land from the original north line of said lot No. 168 a distance far enough down the original east and west lines of said lot to embrace and include one third of said lot." These allegations were stricken upon the ground that they were irrelevant and immaterial, the plaintiffs contending that they were not concerned with any transaction between John A. Steadham and the defendant W. L. Steadham. While, contrary to the allegations, the administrator could have sold a lesser quantity of land than he had been granted leave to sell or than he had advertised, it was error to strike paragraph 10 in its entirety upon the ground that all of the allegations contained therein were irrelevant and immaterial (plaintiffs' demurrer, paragraph 8). Paragraph 11 of the answer alleged that there was never any agreement between John A. Steadham and the plaintiffs or the administrator by which the Southern Railroad was made the north line of the north one-third lot of land 168. This averment was stricken as irrelevant and immaterial. This ruling was erroneous, for the reason that paragraph 11 was material (plaintiffs' demurrer, paragraph 9).

Paragraph 12 of the answer alleged: "Defendant further shows that he nor his brother, John A. Steadham, had nothing to do with E. H. Cobb applying for administrator of the W. W. Cobb estate; that they knew nothing about it until after he was appointed, and when said land was advertised for sale John A. Steadham attended the sale and bid upon said land, and paying therefor the full mar-

ket value for said tract of land which was purchased by him; and that this defendant, some two years later, purchased said land from John A. Steadham; and that the only thing that he desires in this case is for the line to be established in its correct place, and that it include the land that was sold by the administrator, E. H. Cobb, and purchased by John A. Steadham and paid for by John A. Steadham, and the land for which plaintiffs in this case received the proceeds of the same; and his rents and profits for that portion of said tract of land which was taken by the plaintiffs in this case, after they purchased lot No. 185 at the sheriff's sale on a judgment against John A. Steadham for a purchase-price. Defendant shows that he is entitled to the north third of lot of land No. 168, from the original north line of said lot far enough south to include one-third of said lot." This paragraph was demurred to *as a whole* for several reasons. It was not subject to be stricken in its entirety for any reason urged; nor was the allegation as to rents and profits subject to special demurrer on the ground that it failed to state which one of the plaintiffs took any of the rents and profits, the petition having alleged in effect that the rents were taken by the plaintiffs, that is, all of them. Nor was any other portion of paragraph 12 subject to the particular criticism contained in the special demurrer (plaintiffs' demurrer, paragraph 10). Paragraph 14 of the answer alleged "that the administrator of the W. W. Cobb estate is dead, and that now there is no administration upon the same, but all persons interested are parties to this suit, and the relief can be granted without an administrator being a party." This paragraph was demurred to on the ground that the plaintiffs were not parties to the deed which the defendant sought to have reformed, and that the deed could not be reformed except as against an administrator. Under the principles ruled in the preceding division, the court erred in sustaining this ground of demurrer (plaintiffs' demurrer, paragraph 12). Paragraph 13 of the answer was quoted in the statement preceding this opinion. The court sustained subparagraphs c, d, e, and f of paragraph 11 of the plaintiffs' demurrer, and in doing so struck the following portions of paragraph 13 of the defendants' answer:

"(a) That the said J. A. Steadham paid $600 cash and executed his note for the balance of the purchase-price, to wit, $600

together with interest on said note for a period of twelve months, making the face of the note for $648. That on or about the 28th day of January, 1928, the defendant, W. L. Steadham, paid to the administrator the balance of the purchase-price of said land, and said note was indorsed and delivered to him. And said administrator executed a deed to J. A. Steadham to the north third of lot of land No. 168 in the 6th district, and by mistake fixed the northern boundary of said lot as the Southern Railroad, when in fact and truth the entire north third of said lot was advertised and sold by said administrator, which would be bounded on the north by the original north line of said lot, and running down the east and west original lines of said lot a distance sufficient to include one third of said lot. That the said J. A. Steadham, at the time of execution of the deed, had been injured by a fall from a housetop and was in a critical condition, and did not discover the mistake in said deed until after the said J. A. Steadham had purchased lot of land No. 185 in the 6th district, being the balance of the W. W. Cobb estate that was sold by the said administrator. (b) That at the time of discovering the mistake in the deed J. A. Steadham was in possession and owned the entire W. W. Cobb estate. He then sold to defendant, W. L. Steadham, the north third of lot No. 168 in the 6th district, and made the deed in accordance with the purchase at the administrator's sale to the north third of said lot. (c) Defendant alleges and shows that in drawing the deed, fixing the northern boundary of said tract as the Southern Railroad, was a mistake and inadvertently made, and the effect of which was to limit the land sold and conveyed." Subparagraph (a) as quoted was demurred to upon the ground that the administrator's deed was binding upon John A. Steadham and his successor in title, W. L. Steadham, and no reason was set forth for any change or correction to be made in it; and upon the further ground that the allegation as to the injury of John A. Steadham and his subsequent discovery of the alleged mistake failed to show that he was not in possession of his mental faculties and fully capable of transacting business, or that for any reason he should have accepted a deed that was not absolutely correct. The allegation in subparagraph (b) was demurred to upon the ground that the facts therein stated would not be binding upon the plaintiffs. The allegation in subparagraph (c) as to mistake in drawing the

deed was demurred to as irrelevant and immaterial, and as stating no facts which would authorize the relief of reformation; and upon the further ground that the only way the deed could be corrected would be to have an administrator appointed, and "that he be permitted to correct the same." The allegation in regard to the physical condition of John A. Steadham was not irrelevant or otherwise subject to the demurrer. 23 R. C. L. 356, § 46, et cit. Nor was there any merit in the other grounds of special demurrer to the stated portions of paragraph 13 of the answer (plaintiffs' demurrer, paragraph 11, c-f). We have not deemed it necessary to refer to the grounds of the plaintiffs' demurrer which the court *overruled* or which were *properly* sustained. From what has been said, the judgment must be reversed for errors committed by the court in sustaining the enumerated grounds of the plaintiffs' demurrer. Since the errors thus committed rendered the further proceedings nugatory and will necessitate a new trial in the light of the principles stated in this decision, no rulings will be made upon the various grounds of the defendant's motion for a new trial.

*Judgment reversed. All the Justices concur.*