HYMAN KUPFERSCHMIDT ET AL., DEFENDANTS IN ERROR, v. AGRICULTURAL INSURANCE COMPANY OF WATERTOWN, NEW YORK, PLAINTIFF IN ERROR.

Argued June 24, 1910—Decided November 14, 1910.

1. A policy of fire insurance made payable to a first mortgagee in the standard mortgagee clause cannot be altered by extrinsic testimony in a suit at law by the second mortgagee to recover thereon, for the purpose of establishing that the intention of the parties to the contract was to include the second mortgagee as a party to the contract.

2. While evidence *dehors* the record is competent to explain a doubt or uncertainty in the case of a latent ambiguity, it cannot be introduced in a suit at law for the purpose of reconstructing the contract in suit as a basis for the liability alleged in the declaration.

On error to the Passaic Circuit Court.

For the plaintiff in error, *Condict, Condict & Boardman.*

For the defendant in error, *Clarence Kelsey.*

The opinion of the court was delivered by

MINTURN, J. The writ of error in this case brings before us for review a judgment directed by the trial court at the Passaic Circuit in favor of one of the plaintiffs and against the remaining two plaintiffs. The judgment, so far as it was directed in favor of Clarence Kelsey only, is the subject of review here.

The suit was brought upon a policy of fire insurance issued by the defendant to Hyman Kupferschmidt, as owner of the premises No. 100 Arlington avenue, Clifton, New Jersey. The policy contained the standard mortgagee clause, providing that the loss, if any, should be payable to Charles Schlageter as first mortgagee. Schlageter was the holder of a first mortgage for the sum of $2,000, and he, on November 30th, 1908, assigned his security to the American Mortgage Company, which company subsequently assigned it to Albert K. Condict, who thereafter assigned it to the plaintiff Clarence Kelsey, and he, finally, on the 17th day of March, 1909, assigned it to the plaintiff Weinberger. On the same day, Schlageter executed an assignment of all the policies of insurance on the property, so far as he was interested, to Weinberger.

On October 15th, 1908, the insured premises were damaged, and on February 16th, 1909, were entirely destroyed by fire, and this suit was instituted by the three plaintiffs to recover for the damage resulting from the first fire.

It is conceded that Kelsey was the holder of the second and third mortgages on the premises at the time of the fires.

Kupferschmidt joins in the suit as owner of the building, Weinberger as assignee of the first mortgagee, and Mr. Kelsey, by reason of the fact that he was the holder of a second mortgage on the premises, which, according to his claim, was covered, or intended to be, by the standard mortgagee clause

which was attached to the policy of insurance sued upon. That clause provided for payment of loss or damage, if any, to Schlageter, and at the end of the mortgagee clause contained the words, "Clarence Kelsey, second mortgagee," without further connection with or reference to the clause itself.

The testimony in the case shows that after Kupferschmidt became owner of the premises, the plaintiff Kelsey, as second mortgagee, wrote to him requesting that a policy of insurance be issued to protect that interest; that Kupferschmidt subsequently called upon the defendant's agent at Passaic and gave him the names of the first and second mortgagees and requested him to issue a policy for $750 to cover the second mortgagee and to mail the policy to Kelsey. This was done by mailing to Kelsey the policy in suit.

The questions presented upon the assignments of error to the motions to nonsuit and to direct a verdict are entirely of a contractual character, which must be determined by the terms of the contract sued upon.

In this case, so far as Kelsey is concerned, we find the elements of a contract lacking, and only by supplying testimony *dehors* the writing itself, is it possible to supply them. Testimony of that character is not admissible in a common law action where the terms of the contract are spread upon the record, as in the case at bar, the effect of which is to limit the liability to the terms of the written instrument thus produced. 1 *Tidd* 635; 1 *Chit.* 530.

The question presented, therefore, is limited to the single inquiry whether upon a contract ostensibly shown by the pleadings and the record to have been entered into between Schlageter and the insurance company, another contract may be spelled out of the language of the convention so as to introduce Kelsey as another party to the contract by reason of the interposition of the naked words at the foot of the instrument, "Clarence Kelsey, second mortgagee."

The question involved here has been before our Supreme Court in the case of *Kupfersmith* v. *Delaware Insurance Co., ante p.* 191, and *Weinberger* v. *Agricultural Insurance Co., ante p.* 202, and in each instance judgment went for

the defendants upon the demurrer filed to the declaration. In the former case the question presented here was distinctly presented to and determined by that court in an opinion by Mr. Justice Bergen, wherein he says: "The only contract of insurance with these mortgagees as declared by the declaration is that contained in the mortgagee clause, and it shows that the contract was made with Charles Schlageter, and that no contract was made with Kelsey, and therefore the declaration states no cause of action so far as Kelsey is concerned."

This construction of the policy is in harmony with the conclusion we have reached in the case at bar. To impose liability upon the defendant in this suit, according to the insistment of the defendant in error, would, in effect, result in requiring the court to construct from the plain terms of a contract with one party a contract with another, thus injecting into a contract between two persons a tripartite character, which its language will not support, and which can be called into existence in a court of law only by the introduction of evidence *dehors* the record; for, confessedly, unless we can read the name of the defendant in error into this contract as a party to its terms, his action must fail. *Consumers Match Co.* v. *Insurance Company,* 41 *Vroom* 226; *Martin* v. *Insurance Company,* 28 *Id.* 623.

We are asked to adopt this construction upon the ground that the appearance of the words, "Clarence Kelsey, second mortgagee," at the foot and entirely outside of the standard mortgagee clause, is a latent ambiguity susceptible of explanation by testimony *aliunde* in a court of law. In all the cases to which we are referred to support this proposition a contract in fact existed *inter partes,* which would be either meaningless or unenforceable without testimony *dehors* the record to explain its provisions.

*Griscom* v. *Evans,* 11 *Vroom* 402, involved the construction of a will where extrinsic testimony has invariably been admitted to explain a latent ambiguity arising where two or more persons existed, each answering the description contained in the will. "In such an event," says Mr. Justice Depue, "parol evidence of what the testator said may be lawfully ad-

duced to show which of them he intended; but such evidence will not be allowed to show that he meant a thing different from that disclosed in the will."

So, in *Sanford* v. *Newark, &c., Railroad Co.,* 8 *Vroom* 1, the contract in suit did not define or indicate the character of the bridge in question, and Chief Justice Beasley, speaking for the Supreme Court, said that "the bridge to which the work appertained not being defined in writing, it became entirely legal to define it by parol proof."

In the early case of *Rape* v. *Westcott,* 3 *Harr.* 244, Chief Justice Hornblower, speaking for the Supreme Court, held that the Court of Common Pleas erred in refusing to admit testimony going to show that the name of one of the makers to the promissory note in suit, which appeared in the corner of the note as a witness, was, in fact, a fictitious name, and had been put there after the note had been made by a person other than the maker. But it will be observed that this rule could not result in subverting the existing contract, or in changing its terms, but applied simply to the method of proving the note.

It is to be observed also that the rules applicable to the proof of commercial paper are the outgrowth of the law merchant, and present an exceptional innovation in favor of trade and commerce under the well-settled rules of the common law, which, in the time of Lord Holt (1690), adopted the *lex mercatoria* as the law of the land. *Mogadara* v. *Holl,* 1 *Show.* 318; *Hodge* v. *Steward,* 12 *Mod.* 37.

Authorities may be multiplied, illustrative of the general rule that evidence *dehors* the written instruments, may be received to enable a court to identify the person mentioned in it in case of doubt, but it may be confidently stated that the rule was never extended so as to enable a suitor in a court of law to substitute himself for or in conjunction with the principal named in the written instrument declared upon. Baron Parke emphasizes the general rule in a note to *Saunderson* v. *Piper,* 5 *Bing. N. S.* 425, where he says: "No extrinsic evidence of the intention of the party to the deed from his declarations, whether at the time of his executing the instrument

or before or after that time, is admissible, the duty of the court being to declare the meaning of what is written in the instrument, not what was intended to be written." And Chief Justice Tindal, in 9 *Cl. & Fin.* 565, concisely declares: "The general rule is that such instrument is always to be construed according to the strict, plain, common meaning of the words themselves; and that in such case evidence *dehors* the instrument for the purpose of explaining it according to the surmise or alleged intention of the parties to the instrument is utterly inadmissible."

The importance of this rule becomes particularly conspicuous when it is recalled that the legal effect of the standard mortgagee clause is to create a distinct contract between the first mortgagee and the underwriters. *Reed* v. *Insurance Company,* 47 *Vroom* 11; *Smith* v. *Union Insurance Co.,* 25 *R. I.* 260. And this court has held that such a contract cannot be altered or varied by parol evidence of what occurred between the insured and the agent of the insurer at the time of effecting the insurance. "In an action at law upon the policy," said Mr. Justice Depue, "the rights of the parties must be determined by the contract of insurance, which cannot be altered or modified by extrinsic evidence of a different agreement." *Franklin Fire Insurance Co.* v. *Martin,* 11 *Vroom* 568; citing *Denees* v. *Manhattan Insurance Co.,* 6 *Id.* 366.

For these reasons the judgment below is reversed, and a *venire de novo* is awarded.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Voorhees, Minturn, Bogert, Vredenburgh, Dill, Congdon, JJ. 13.