## CLARENCE KELSEY

*v.*

## AGRICULTURAL INSURANCE COMPANY OF WATERTOWN, N. Y.

[Decided February 20th, 1911.]

1. Where a fire policy, containing a mortgage clause, did not correctly set forth the contract that the loss should be payable to the first mortgagee, as his interest might appear, and to the second mortgagee, as his interest might appear, because of a failure to state the rights of the second mortgagee, the second mortgagee could sue insurer to reform the policy without making the owner or the first mortgagee a party.

2. A bill by a second mortgagee to reform a fire policy so as to correctly set forth his rights to recover in case of loss will not be stricken out on motion on the ground of laches, where the delay of less than four years could not have injuriously affected insurer.

3. A second mortgagee who brings an action at law on a fire policy containing a mortgage clause to recover for a loss is not thereby estopped under the doctrine of election of remedies from suing in equity to reform the policy so as to correctly set forth the contract as relied on in the action at law.

4. A bill by a second mortgagee to reform a fire policy containing a mortgage clause, which alleges that the agent of insurer intended that the second mortgagee should be protected by the mortgage clause, that the mortgagee so intended, and that there was a mutual mistake in supposing that, by placing the second mortgagee's name on the paper at a place other than at the commencement of the mortgage clause, he would be protected, sufficiently charges mutual mistake.

5. The act of an owner in procuring a fire policy for the benefit of the mortgagee without regard to any act of the owner is not contrary to public policy, and the contract is enforceable at the suit of the mortgagee.

6. The court will not on motion dismiss a bill by a second mortgagee to reform a fire policy containing a mortgage clause, so as to set forth his rights, after the first mortgagee has been satisfied, on the ground that insurer will not owe the second mortgagee anything after paying the loss to the first mortgagee as his interest appears, that being a matter to be settled at final hearing, after that contract had been reformed.

---

On motion to strike out bill.

The bill in this case sets out, *inter alia,* that Clarence Kelsey was the holder of second and third mortgages upon certain premises owned by one Kupfersmith; that Samuel Weinberger now holds the first mortgage on the said premises, which said first mortgage was originally held by Charles Schlagater. The bill contains this charge:

"That on or about September 25th, 1907, your orator not having any policy of insurance to cover and protect his investment on said two mortgages, wrote said Hyman Kupfersmith requesting him to forward a policy to your orator; that your orator is informed and believes that said Hyman Kupfersmith took said letter to Ernest A. Moore, Esquire, the local agent at the city of Paterson of the Agricultural Insurance Company of Watertown, New York * * * and directed the said agent to issue a policy of fire insurance insuring him for three years against loss or damage by fire to said dwelling-house to an amount not to exceed $750, and further directed said agent to annex to said policy a mortgagee clause providing that the loss or damage thereunder, if any, should be payable to said Charles Schlagater as first mortgagee and to

your orator as second mortgagee as their interests might appear, and to contain the usual provision that said insurance as to the interest of said mortgagees only therein, should not be invalidated by any act or neglect of the mortgagor or owner of said dwelling-house; and that said Hyman Kupfersmith further instructed said agent that said policy was intended for your orator in compliance with the request contained in the said letter and that when said policy was prepared and ready for' delivery it was to be mailed directly to your orator by said agent; and that said agent read said letter of your orator and agreed with said Hyman Kupfersmith to comply with the request of your orator therein contained and the said instructions and request of said Hyman Kupfersmith; that on or about December 1st, 1907, your orator received through the mail direct from said agent a policy of insurance issued by the said Agricultural Insurance Company of Watertown, New York, numbered 2370 and countersigned by said agent, which policy of insurance your orator now brings here into court."

The policy itself is not attached to the bill, nor is any copy thereof attached, but the original policy was tendered at the time of the argument and such course was not only not objected to by the defendant but throughout both sides have treated the case as if the policy in question was actually before the court by *oyer* or other proper course of proceeding, and I deem it improper, therefore, to avoid deciding the issues because of this irregularity, and shall consider the case as if the policy itself or a copy thereof was annexed to the bill.

Attached to the policy there is the usual "mortgagee clause." This clause, as is well known, is a printed form in which blanks are left for the insertion of the names of the mortgagee or mortgagees. Upon the blank which was used in this case and attached to this policy the agent had written in the name of "Charles Schlagater, first mortgagee," and then, at the bottom of all of the printed matter, but before the date and the signature of the agent, he had inserted the name "Clarence Kelsey, second mortgagee."

With respect to this the bill charges

"that in filling out the printed form of said mortgagee clause the said agent intended to insert the name of your orator followed by the words 'as second' and preceded by the words 'Charles Schlagater as second mortgagee and' at the top thereof, but after writing in the name 'Charles Schlagater' at the left of the top line, he found that there was not enough space left in which to conveniently or legibly insert the name of your orator preceded by the words 'as first mortgagee and,' and thereupon, and finding no other space in which to insert your orator's name,

he wrote the word 'first' to the right of the said top line after the printed word 'as' and inserted the name of your orator followed by the words 'second mortgagee' at the bottom of said mortgagee clause, over the date and name of said agent and partly across the printed matter of said clause; that accompanying said policy was a letter from said agent notifying your orator that said policy was issued at the request of said Hyman Kupfersmith as insurance on said property for your orator, or to that effect."

The bill then goes on to recite that the complainant looked at the said policy and was satisfied that the clause as written showed the intention of the company to insure him, and put the policy away and had no occasion to recur to the matter until the month of December, 1908, when Moore, the above-mentioned agent of the company, called upon him and notified him of a fire and conversed with him about his insurance. He then sets out various actions at law which were brought upon the policy and shows that the defendant company in the law suits contends that the written clause does not include Kelsey as a party to the contract.

His prayer is that the clause as written be reformed in accordance with what he charges was the intention of the parties, so that the mutual mistake which was made shall be corrected and the clause will read that Charles Schlagater as first mortgagee and Clarence Kelsey as second mortgagee are each contracted with in the terms of the said mortgagee clause.

The bill also prays for an injunction preventing the defendant company from setting up as a defence in any law action the policy in its unreformed condition.

To this bill the defendant objects on various grounds which will be dealt with in the opinion, and moves to strike out the said bill under the two hundred and thirteenth rule.

*Mr. Clarence Kelsey, pro se.*

*Messrs. Condict, Condict & Boardman,* for the defendant.

GARRISON, V. C.

Counsel upon each side have argued this case at great length and have each furnished the court with voluminous briefs; but

I do not think it would serve any good purpose for me now to enter into an extended discussion of the case, because in my view the motion to strike out should be refused, and most, if not all, of the questions which are sought to be raised by the defendant thereon should be left for final hearing. I shall, however, briefly deal with each of the points raised and indicate why I do not find that they should result in striking out the bill.

1. It is objected that there is a non-joinder of necessary parties, and that Kupfersmith or Schlagater or Weinberger, or all of them, should be parties. It is argued in this behalf that the bill shows that there has been a loss under the policy, and that the company has various rights with respect to these various persons, and that the policy should not be reformed excepting in a suit in which they are parties.

If this suit were one in which the complainant was endeavoring to recover upon the policy, so different a case would be presented that the arguments of the defendant would have to be carefully considered, if not immediately acceded to; but the complainant in this suit is not seeking in any way to enforce any right that he may have under this policy. The complainant is seeking, as against the defendant company, to have a contract which they made for his benefit express what he charges was the actual intention of the parties, and I do not see why any other party need be in the suit than Kelsey and the company. The rights of no one else are involved, and if the contract is made to read as Kelsey says it should, no one's rights will be injuriously affected save the company's and Kelsey's. The other parties, so far as I can see it, are entirely unconcerned in the matter now before the court.

It has been held that the mortgagee, under the mortgagee clause, is in the same position as if he had taken out a separate policy, free from the conditions imposed upon the mortgagor or owner. *Reed* v. *Firemen's Ins. Co.* (*Supreme Court, 1908*), 76 *N. J. Law* (*47 Vr.*) *11* (at *p. 15*); *Kupferschmidt* v. *Agricultural Ins. Co.* (*Court of Errors and Appeals, 1910*), 78 *Atl. Rep.* *225*. It is this separate contract that the complainant here seeks to have reformed, and I do not see why he need join any other person in his suit than the company.

2. It is alleged that the face of the bill shows such laches on behalf of the complainant that the court should strike out the bill for this reason. The bill shows that Kelsey received the policy about December 1st, 1907; that he looked at this clause upon which his name appeared and reached the conclusion that it showed the intention of the company to protect him; that he was confirmed in this by the agent of the company coming to him as if he were insured under the policy a year later and after a fire had occurred. None of the ordinary reasons which induce a court to dismiss a case for laches are present; that is, no witnesses have died, or papers been lost, or such time elapsed as to make it difficult or burdensome for the defendant to present its whole case with respect to the subject-matter involved; nor are any rights altered. The only possible injury or damage which could result to the defendant by reason of the delay of the complainant in seeking to have the instrument reformed would be that it claims that it had the right to cancel the insurance on ten days' notice, and that a loss has occurred, and that if the policy is now reformed so as to make Kelsey a party to the contract, it is in a different position than it would have been if he had been diligent in having the policy reformed earlier and before the loss.

This may be so, but the defendant is not thereby harmed by the present action. The matter is one which can only be properly determined at final hearing, and then the bill may be dismissed for laches if the facts warrant it—if the facts demonstrate that that is the proper disposition of the case. If the company shows in its case that it did not consider that it had insured Kelsey and was not advised that he claimed to be insured until after the loss, then it may very well be that Kelsey's present claim must be dismissed because it is made at a time when it would be unfair to the defendant to consider it. But on the trial, if the facts show that the company knew that it had insured Kelsey and considered that he was a party to this policy, then I cannot see how it would be proper to refuse to reform the contract at this time. If the company understood that it had contractual relations with Kelsey which it might terminate upon ten days' notice, and did not do so, there is no reason now why whatever contract Kelsey

and the company had should not be expressed in such terms as to effectuate their intention.

I do not think the doctrine of laches should apply to this matter at this stage of the proceeding.

3. It is contended that because Kelsey brought a suit at law upon the policy he is now estopped to apply in equity to have the policy reformed. It is claimed by the defendant that there was an election of remedies, and that by electing to proceed at law he has waived his right to proceed in equity. I do not think that this is so, or that any doctrine of election of remedies applies to this case.

It is true that Kelsey mistakenly supposed that the law court would hold that he was a party to the contract because his name appeared at the bottom thereof and not in its proper place, and that the law court would find from the writing that his name was intended to be at such place in the contract as would make him a party to it. But this was entirely consistent with the position that he takes in this court; and the fact that he began his suit at law upon the unreformed contract and subsequently had to come to this court to prevent what would be an injustice if his case is proven, does not invoke the doctrine of election of remedies, as I understand that doctrine.

4 and 5. These two objections are based upon the argument of the defendant that the bill does not show any mutual mistake. In this I disagree with the defendant. The bill in the part thereof which directly concerns the matter which we are now considering, charges that the agent intended that Kelsey should be protected by the mortgagee clause and that was Kelsey's intention, and that the mutual mistake was in supposing that by placing his name on the paper containing the written terms of the clause at a place other than at the commencement of the said clause would so protect him, and it is obvious that this was a mutual mistake.

6. The sixth objection is based upon the theory that because the bill shows that Kupfersmith, the owner of the property, applied to the company to have this insurance issued to Kelsey and bargained for a clause which should insure Kelsey without regard to the act or neglect of the mortgagor or owner, the bill

should be dismissed. The theory of this is that such a contract negotiated for by Kupfersmith would be against public policy. I cannot seriously consider this objection. In almost every, if not every case nowadays, in which there is a mortgage the owner of the property takes out a policy with the mortgagee clause therein containing the provision above referred to, and I have yet to learn that this proceeding has been objected to or criticised upon the ground here stated in any court in any case.

7 and 8. The seventh and eighth objections are based upon the contention of the defendant that it will not owe Kelsey anything, even if the clause is reformed as he desires, and therefore the court should not reform the contract. I shall not devote any time to this further than to state that this is surely a matter for final hearing. As I have before pointed out, this action is not one to recover upon the policy; its sole purpose, besides incidental injunctive relief, is to have the policy written as the complainant says it was intended to have been written, and to rectify a mutual mistake. My first impression is that whether or not Kelsey can recover anything under the reformed contract should be left to be settled in the suit at law in any event; but, however this may be, it surely should not be settled upon the bill at this stage of the proceedings, and the defendant will be left to make such case concerning that in its answer as it may be advised. Without all the facts before it, this court surely should not hold that Kelsey is not entitled to have the contract reformed if he proves the proper facts to entitle him to reformation. Whether it will refuse him relief notwithstanding the proof of such facts, if with all the facts before it it should determine that he could not recover upon the reformed contract, I do not now decide. All the facts are not now before the court, and it would be entirely improper in my view to refuse the complainant relief at this stage upon the grounds set up in these objections.

The result is that the motion to strike out the bill will be denied, with costs.