JOSEPH GERBER, PROSECUTOR, v. SAMUEL SHERMAN AND ARROW CONSTRUCTION COMPANY, DEFENDANTS.

Argued January 21, 1938—Decided April 26, 1938.

238

Before Justices Bodine, Heher and Perskie.

For the prosecutor, *Schotland & Schotland.*

For the defendant Arrow Construction Company, *Kellogg & Chance.*

The opinion of the court was delivered by

Heher, J.  While serving defendant Sherman as a bricklayer in the performance of a contract with his co-defendant, Arrow Construction Company (hereinafter referred to as "Arrow"), for the doing of the mason work required to erect a dwelling house upon lands owned by the latter, prosecutor suffered injury by accident arising out of and in the course of his employment.  Sherman did not carry workmen's compensation insurance; and the point of inquiry is whether, at the time of the happening of the accident, Arrow and he bore to each other the relation of "contractor" and "subcontractor," within the intendment of section 5 of chapter 178 of the laws of 1917, as amended by chapter 128 of the laws of 1924 (*Pamph. L.* 1917, *p.* 522; *Pamph. L.* 1924, *p.* 244; *Rev. Stat.* 1937, 34:15-79), providing for "the compulsory insurance of compensation payments arising" under the

Workmen's Compensation act of 1911 (*Pamph. L., p.* 134), as amended, and so liable for the compensation payable to prosecutor thereunder. We resolve it in the negative.

These are the essential facts: Arrow's business was the construction of dwelling houses for sale. On May 1st, 1936, it purchased a plot of ground on Eleventh street, in the city of Newark, and shortly thereafter commenced the erection of a one-family dwelling house "for sale." On May 20th, 1936, it entered into the contract whereby Sherman undertook to do the mason work at a fixed price—Sherman to furnish the labor and Arrow to provide the materials. About ninety-five per cent. of the construction work was in this wise let to contractors; the remainder was to be done by Arrow. The latter supervised the construction work so let to others, and provided all the materials for the performance of the contracts, except that relating to the plumbing. There was no architect. Arrow's president, Altshuler, and its secretary, Adelman, were "practical builders;" they superintended the construction work, and performed the duty ordinarily falling upon the architect—of exacting from the several contractors compliance with the specifications. On June 5th, 1936, Arrow entered into an agreement in writing with one Ruth Dorman for the sale to her of the lands and the building "as is." It was therein recited that the dwelling house in the course of erection had "reached a point of construction, where it is framed out and the partitions are set and the rough plumbing and heating is now in process of being installed;" and Arrow undertook to "substantially" complete the building "in accordance with the specifications agreed upon between the parties," and attached thereto. Dorman agreed to pay the consideration price of $17,750 in cash— $1,500 on execution of the contract, and the balance on delivery of the deed—and, "as part of the consideration for the entering into of the within contract," to "procure—at her own cost and expense—the sum of $5,500 to be loaned" to Arrow "without interest to aid it in the completion of the said building, to be evidenced and secured by a so-called construction loan mortgage for three months for that

amount," and to be credited on the purchase price "upon the completion of the building and the closing of title." The "risk of loss or damage * * * by fire or otherwise," prior to the delivery of the deed, was assumed by Arrow, who also undertook, in case of "injury beyond the ordinary wear and tear," to "repair the damage before" delivery of the deed, or to "make an appropriate deduction from the purchase price."

This court has held that where, as here, a landowner undertakes to erect a building upon his lands, and lets the construction work to independent contractors in several parts, he is not a "contractor" within the purview of the cited statute. And this is so even though he supervises the work of the individual contractors with a view to securing conformance to stipulated plans and specifications, and reserves to himself the doing of some of the work essential to the whole. A subcontractor within the design of this statute has been defined as "one who has entered into a contract, express or implied, for the performance of an act with the person who has already contracted for its performance." *Mittan* v. *O'Rourke,* 115 *N. J. L.* 177.

The statutory relationship did not subsist between the defendants when the contract for the mason work was made. And whatever change in Arrow's status was effected by its later agreement to sell and convey the lands and the unfinished dwelling house to Dorman, and to complete the construction work in accordance with the specifications, it did not thereby become charged with the duty of satisfying Sherman's obligations under the Workmen's Compensation act, by reason of his failure to carry the compensation insurance required by the act of 1924, *supra.*

Fairly construed in the light of its general object, the last cited statute fixes the obligation with reference to the time when the relation of "contractor" and "subcontractor" arises, *i. e.,* the time of the making of the contract from which this relationship springs. Its obvious aim was to render effective the provision for conpulsory compensation insurance, by extending to the contractor the subcontractor's liability to render compensation under the act of 1911, as amended, in

the event of the subcontractor's failure to carry the insurance so commanded. There is laid upon the contractor, on pain of personal liability, the duty of invoking such measures as may reasonably be deemed necessary to compel the subcontractor to discharge his statutory obligation. It is then within his power to exact from the subcontractor an undertaking to observe the statutory mandate throughout the contract period; and he may provide the means for its enforcement.

Here, Arrow concededly was not under the statutory duty when its contract with Sherman was made; and the obligation did not arise by reason of anything that occurred thereafter. Its contract with Dorman had no effect upon its relations with Sherman. It was not thereby empowered to call upon Sherman to provide the requisite insurance on penalty of termination of the contract. Nor could it procure the insurance at Sherman's expense, for it was not invested with that authority either under the statute or the contract. In such circumstances, its refusal to permit Sherman to perform the contract because of his failure to provide compensation insurance would indisputably constitute a breach rendering it liable for the consequential damages. The spirit of the enactment forbids its application by reason of any change in Arrow's status effected by the contract with Dorman. Without conceding such legislative authority, it does not exhibit a purpose to impose upon Arrow, by reason of that circumstance, an obligation that essentially was Sherman's.

The judgment of the Essex Common Pleas, affirming the judgment of the compensation bureau in favor of the defendant Arrow Construction Company is accordingly affirmed, but without costs.