Union County Court of Common Pleas.

CLARENCE R. WADGE, PETITIONER-APPELLANT, v. CREST-
WOOD ACRES, INC., RESPONDENT-APPELLEE.

Decided January 5, 1942.

For the petitioner-appellant, *Samuel J. Marantz.*

For the respondent-appellee, *Edwin Joseph O'Brien.*

McGRATH, C. P. J.   Petitioner was injured while working
on a house owned by respondent, and his petition was dis-
missed below on the ground that he was an independent con-
tractor.   The basis of this decision is an alleged written con-
tract between respondent as owner, and petitioner and another
carpenter named Hagen, which writing recites that the two
carpenters "agree to supply all labor necessary to complete the
carpenter work except trim garage doors and finish floors work
enumerated in the plans and specifications attached hereto
and made a part hereof."

No plans or specifications are attached, although the con-
tract specifically provides that the work is to be done accord-
ing to attached plans and specifications and also refers to
"Plan 5."   Such a situation creates a latent ambiguity which
may be explained by evidence dehors the record to show what
plans and specifications were intended to be attached to the
writing in order to make it complete, but such evidence can
never be shown to show that the parties meant something else.
If the writing is not explained or completed by proper legal

evidence, it is unenforceable as a contract. *Kupferschmidt* v. *Agricultural, &c.,* 80 *N. J. L.* 441; 78 *Atl. Rep.* 225; *Moebus* v. *Collins,* 85 *N. J. L.* 430; 89 *Atl. Rep.* 986.

No attempt has been made in the present case to complete the writing by showing what plans and specifications were intended as part thereof. On the contrary respondent undisputably never intended to use any plans and specifications, either those referred to in the "contract" or any others. There were some plans and specifications in existence which respondent had used in order to induce the F. H. A. to grant a construction loan on the proposed house but after the loan had been obtained, they were conveniently ignored by respondent, and the house was built to suit respondent's convenience, in accordance with day-by-day instructions and corrections of Tony Colucci, the respondent's president and superintendent. Colucci's feeble excuse for not using these specifications on which the loan had been obtained is: "Nobody ever asked for specifications; the plans are so simple, there is enough information on there. It is not necessary to have a specification." He also says no plans and specifications were submitted to the men when they figured the agreed price. Also it is admitted that no specifications were submitted to the men, so obviously there could not have been any "meeting of the minds" either on the plans and specifications referred to in the writing or any others, written or verbal. That specifications would have shown the details of construction if any had been produced was admitted; also, it was admitted that it is impossible to figure out what specifications would show if any had been produced. Despite this, no attempt was made to introduce evidence of what plans and specifications were intended in the writing and the court is completely ignorant of what would have been shown if any had been produced. There is some reference in the evidence to a plan, but none was introduced in evidence and there is no evidence that it was the plan referred to in the writing. In any event it was not complete and was not followed.

It is therefore clear that the alleged written contract must be considered as void for uncertainty, since the minds of the alleged contracting parties never met on any "attached plans

and specifications." Since the writing referred to "attached" plans and specifications and made them a part thereof, it could not be shown, in order to complete it, that some other and different specifications had been agreed upon (*Kupferschmidt* v. *Agricultural, &c., supra*) but none were ever agreed upon and the work was done according to Colucci's daily instructions and occasional corrections. All the petitioner did was to work at his trade under the direction of Colucci in the same manner that any carpenter would do; petitioner never agreed to any completed plans or specifications, and these were never unfolded to him in a complete state, but only piece-meal as the work went along. Before the work went very far he was injured and had to quit working. What Hagen (his alleged partner) did afterwards could not bind petitioner since the "partnership" existed only by virtue of the written "contract" and the "contract" was void, but as a matter of fact Hagen quit before the job was finished and the house was completed by others under a contract with the respondent. Respondent's position is, not that some other agreement was made, but that the petitioner and Hagen defaulted on the alleged written contract.

Of course, in any event, petitioner was not an independent contractor for when the written contract is seen to have been a nullity (and that even if it were valid, it had not been followed) the petitioner is shown to have been nothing more than a journeyman carpenter, working at his trade from day to day under the instructions of his employer in the same manner that any carpenter would do. He had no control over the result nor over the methods of construction, for the owner was building the house to suit itself. What the result would finally look like or consist of when finally completed was never disclosed to him, much less agreed upon, and the record is barren of any evidence of what the respondent intended to build or finally did build. Of course, a skilled carpenter knows in a general way how to follow his trade according to the instructions of his employer but it is common knowledge that a house may assume innumerable shapes and sizes, and that there are numerous methods of construction and that what the result will be depends on the manner or

method of construction. It can be a cheap job or a good one, plain or ornate, flimsy or sturdy, depending on how the owner wants it built, and the method of construction determines how many hours the workmen must put in, and what risks they shall run. All this was under control of respondent's daily instructions and it is this control which determines the master and servant relationship. *Errickson* v. *Schwiers,* 108 *N. J. L.* 481; 158 *Atl. Rep.* 482; *Essbee, &c.,* v. *Greenhaus,* 114 *N. J. L.* 492; 177 *Atl. Rep.* 562; *Rojeski* v. *Pennington, &c.,* 118 *N. J. L.* 335; 192 *Atl. Rep.* 746; *Brown* v. *Kremer,* 124 *N. J. L.* 242; 11 *Atl. Rep.* (*2d*) 248. Respondent could have put the men off the job if they had failed to carry out Colucci's orders and would have no alternative if it wished the work done according to its instructions. True, other men were hired at the suggestion of respondent and for its convenience but they were not hired to carry out the void contract but to carry out Colucci's orders; they were paid by respondent as the work went along, depending on the amount of work done; they were carried on the books of the respondent for Unemployment, Social Security and Workmen's Compensation, although the "contract" did not purport to be a subcontract. *Gerber* v. *Sherman,* 120 *N. J. L.* 237; 198 *Atl. Rep.* 762. Respondent would have carried petitioner and Hagen also for Workmen's Compensation if they had been willing to pay for it.

It is true that where there is a valid contract the mere fact that the owner supervises the work for the purpose of seeing that the contract is carried out does not make the contract one of master and servant, but here the supervision was not for the purpose of seeing that the terms of a contract should be carried out but for the purpose of seeing that the work was done in violation of a contract (if any existed) or at least of seeing that it was done without reference to a written contract. It is perfectly obvious that respondent did not want any specifications to be used, and that it wanted the work done in the way that would be to its best advantage as a speculative builder, and that it intended to and did control the work and skill of petitioner for the purpose of building the kind of house it wanted and in the way it wanted it to be built, and

not in the way petitioner would build it, nor in the way the F. H. A. expected it to be built. Even a layman knows that a speculative builder can build more cheaply if he builds to suit himself, instead of according to specifications which have been approved by the mortgagee, and that the methods of construction will be different.

Of course, for an employer to control a skilled workman it is not necessary to tell the workman how to drive each nail or saw each board. It is his skill which is controlled by the master's instructions and which is necessarily exercised subject to the master's instructions, when the master chooses to exercise them, in order to accomplish the desired result. The choice of methods here was the owner's, not the petitioner's. If a workman is an independent contractor merely because his skill enables him to work at his trade under the general orders of his employer, then no skilled tradesman could ever recover compensation.

To constitute a master and servant relation it is not necessary to have any particular method of payment. *Toner* v. *International, &c.,* 113 *N. J. L.* 29; 172 *Atl. Rep.* 389; *Brown* v. *Kremer, supra.* Nor is it necessary to have any agreement to pay since the law implies reasonable payment. *Essbee Amusement Corp.* v. *Greenhaus, supra.* Nor is the method of hiring important. *Essbee, &c.,* v. *Greenhaus, supra.*

The court below therefore had jurisdiction and the case will be remanded in accordance with *Jayson* v. *P. R. R. Co.,* 101 *N. J. L.* 159; 127 *Atl. Rep.* 169. An order will be entered accordingly.