## CATHER v. OCEAN ACCIDENT & GUARANTEE CORP., LIMITED, OF LONDON, ENGLAND.

Civ. A. No. 32-50.

United States District Court
D. Nebraska, Lincoln Division.

Nov. 15, 1950.

Jack M. Pace, Mockett, Davies, Pace & Perkins, of Lincoln, Neb., for the plaintiff.

Max Kier and Charles Bocken, of Lincoln, Neb., for the defendant.

DELEHANT, District Judge.

The defendant moves that this action be dismissed because, (a) the complaint fails to state a claim against the defendant upon which relief can be granted, and (b) the amended complaint fails to include parties indispensable to the determination of the claim reflected in it.

The former of the two grounds has not been supported by argument or briefs; and it is manifestly untenable. The latter ground has been submitted to the court on oral arguments and briefs and is now considered. It will be understood more clearly if the history of this action is recalled.

In his original complaint, the plaintiff, a citizen of Nebraska, alleged the issuance by the defendant, a British corporation, of a policy of Workmen's Compensation insurance identified by its serial number, without, however, alleging the identity of the assured under the policy. It then alleged that, some six months after the issuance of the policy, "by endorsement attached to said policy * * * the coverage of said policy was extended to plaintiff"; that thereby, and by the policy, the defendant undertook to defend the plaintiff against claims made against him under the Nebraska Workmen's Compensation Law, R.S. 1943, § 48-101 et seq., and to pay in the plaintiff's behalf all sums due from him under such law; that, thereafter, a designated employee of the plaintiff in his business was injured in an accident arising out of and in the course of his employment, who made claim, and later prosecuted to final judgment a proceeding, for benefits under the cited law, with the consequence that an award for such benefits in amounts and with present value largely exceeding $3,000 is outstanding in favor of the employee and against the plaintiff; and that

the defendant has refused to acknowledge liability in the premises under the policy with its endorsement, or to defend against the claim or proceeding or to satisfy the judgment. In that complaint the plaintiff prayed "(1) that defendant be required to perform its obligations under the aforesaid contract of insurance, and in the alternative (2) that if specific performance is not granted that plaintiff have judgment against the defendant in the sum" alleged to be the present value of the future payments required in the pleaded compensation award or judgment.

To that pleading a motion, now of no significance, was tendered and, upon hearing, denied. D.C. 10 F.R.D. 437. But shortly after that denial the plaintiff filed an amended complaint. It sets out the plaintiff's claim with much greater particularity than did the original complaint and with a substantial departure, both in basic facts and in the relief sought. The factual variation observable in the amended complaint has to do with the manner of the issuance and endorsement of the policy and with the circumstances thereof. The amended pleading asserts that a local Lincoln, Nebraska, insurance agency, as the defendant's authorized representative, on July 2, 1948 issued the policy to the plaintiff's father, Howard B. Cather, 2810 P Street, Lincoln, who was then individually engaged in the general contracting business at that address; that Howard B. Cather's three sons, Howard B. Cather, Jr., Robert H. Cather and the plaintiff, were associated with their father in that business (although the date of the commencement of such association, beyond an inference that it began after July 2, 1948 and before July 20, 1949, is not clearly disclosed); that the plaintiff as an individual also operated at and out of the same address an outdoor advertising and sign painting business in which his father and brothers had no interest; that on July 20, 1949 the defendant's agent, upon Howard B. Cather's oral notification and request, made and furnished an endorsement to the policy, changing the named insured to read as follows: "Howard B. Cather, Sr., Howard B. Cather, Jr., Robert Cather and Myers B. Cather D/B/A Cather Construction Company, a co-partnership"; that, in point of fact, in his oral notification and request to the defendant's agent, Howard B. Cather not only notified the agent of the association of his three sons with him in the general contracting business but also notified such agent of the concurrent operation at the same address by the plaintiff individually of the outdoor advertising and sign painting business and requested that the endorsement be so framed as to provide, and by the agent was assured, that it would provide, Workmen's Compensation coverage for both businesses; notwithstanding which, the endorsement actually made, covered in its language only the partnership and its general contracting business. Making again the allegations of the original complaint touching the injury of the alleged employee (obviously one of the plaintiff's brothers and partners in the general contracting enterprise) and the ensuing claim and litigation, the amended complaint tenders the following prayer: "that the insurance contract hereinbefore described be reformed to express the real agreement of the parties, and that he have judgment against the defendant for the sum" of the alleged present worth of the award.

The instant motion followed the service and filing of the amended complaint, and it is bottomed on the plaintiff's failure to make the designated partners in the general contracting business and named persons insured by the policy under the endorsed modification, (other than the plaintiff) parties to the action.

The defendant's right to tender its position by motion is declared by Fed.Rules Civ.Proc. rule 12(b) (7), 28 U.S.C.A., whose material language is: "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * (7) failure to join an indispensable party."

Rule 19 deals with necessary joinder of parties. Its first two subsections follow:

"Necessary Joinder of Parties

"(a) * * * Subject to the provisions of Rule 23 and of subdivision (b) of this rule, persons having a joint interest shall be made parties and be joined on the same side as plaintiffs or defendants. When a person who should join as a plaintiff refuses to do so, he may be made a defendant or, in proper cases, an involuntary plaintiff.

"(b) * * * When persons who are not indispensable, but who ought to be parties if complete relief is to be accorded between those already parties, have not been made parties and are subject to the jurisdiction of the court as to both service of process and venue and can be made parties without depriving the court of jurisdiction of the parties before it, the court shall order them summoned to appear in the action. The court in its discretion may proceed in the action without making such persons parties, if its jurisdiction over them as to either service of process or venue can be acquired only by their consent or voluntary appearance or if, though they are subject to its jurisdiction, their joinder would deprive the court of jurisdiction of the parties before it; but the judgment rendered therein does not affect the rights or liabilities of absent persons."

The prime question, therefore, is the relationship, if any, towards this action of the partnership and its members designated in the pleaded endorsement, in the light of the character, coverage and obligations of the policy itself.

The original complete policy with all of its endorsements has been filed in the action and is, therefore, before the court. Without unnecessary particularization, it is observed that, on the one hand, it provides coverage of the assured for the period of one year ending July 2, 1949 for its obligations under the Nebraska Workmen's Compensation Law and, on the other, prescribes therefor a minimum premium of $61 and a deposited premium of $70, but leaves the amount of the eventual actual premium which the assured must pay for coverage to determination upon an audit of the assured's payroll during the term of the policy, and the application, to its several classifications of work, of the appropriate and exactly specified premium rates per $100 of remuneration to the several workmen employed by the assured.

It will be kept in view also that what the plaintiff's prayer seeks is not the substitution of the plaintiff as assured in the place and stead of the named assured, with the effect of denying coverage to the latter, but rather the inclusion as an assured of the plaintiff, along with the named assured, with the consequence of providing coverage for both of them.

While Rule 12(b) (7) refers to, it does not define or describe, indispensable parties. For an understanding of that term one is remitted to the earlier decisions of the federal courts, oriented on most occasions to the matter of jurisdiction. Similarly, Rule 19, in prescribing standards for the necessary joinder of parties "made no change in existing law relative to compulsory or dispensable joinder". Wesson v. Crain, 8 Cir., 165 F.2d 6, 8; Young v. Garrett, 8 Cir., 149 F.2d 223, 228; Chidester v. City of Newark, 3 Cir., 162 F.2d 598. Opinions indicative of the definition of indispensable parties antedating the operative date of the Rules, are, therefore, instructive upon this submission.

In many reported decisions parties have been considered under the classifications of "formal", "proper", "necessary" and "indispensable". Formal parties are those who have no interest in the controversy between the immediate litigants but have an interest in the subject matter which may conveniently be settled in the suit. Division 525 O.R.C. v. Gorman, 8 Cir., 133 F.2d 273. The present controversy does not involve that term. Obviously, too, it is not concerned with parties who are proper, but not necessary or indispensable in the circumstances. The emphasis is upon indispensability as distinguished from necessity in the characterization of parties.

In Shields v. Barrow, 17 How. 130, 58 U. S. 130, 15 L.Ed. 158, the supreme court, after adverting to Russell v. Clarke's Executors, 7 Cranch 69, 3 L.Ed. 271, said: "The court here points out three classes of parties to a bill in equity. They are: 1. Formal parties. 2. Persons having an interest

in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. These persons are commonly termed necessary parties; but if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties. 3. Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."

 The classification of parties to actions, in respect to the imperative requirement for their inclusion, was succinctly stated in paragraph 2 of the syllabus, fairly reflecting the opinion's thought in Chicago, M. St. P. & P. R. Co. v. Adams County et al., 9 Cir., 72 F.2d 816, in this manner: "Persons having interest in subject-matter of litigation which may conveniently be settled therein are 'proper parties,' those whose presence is essential to determination of entire controversy are 'necessary parties,' but, if interests of parties before the court may be finally adjudicated without affecting interests of absent parties, presence of 'proper parties' is not indispensable, whereas 'indispensable parties' are those having such an interest in subject-matter of controversy that final decree between parties before the court cannot be made without affecting their interests or leaving controversy in such situation that its final determination may be inequitable." See also Wesson v. Crain, supra; Capital Fire Ins. Co. v. Langhorne, 8 Cir., 146 F.2d 237; Ford v. Adkins, D.C.Ill., 39 F.Supp. 472; Burton-Sutton Oil Co. v. Commissioner of Internal Revenue, 5 Cir., 150 F.2d 621, 160 A.L.R. 961; Montfort v. Korte, 7 Cir., 100 F.2d 615; Commercial Casualty Ins. Co. v. Lawhead, 4 Cir., 62 F.2d 928; State of Washington v. United States, 9 Cir., 87 F.2d 421, 427, 428.

In the opinion last cited, the distinction between an indispensable party and a necessary party is thus characterized:

"There are many adjudicated cases in which expressions are made with respect to the tests used to determine whether an absent party is a necessary party or an indispensable party. From these authorities it appears that the absent party must be interested in the controversy. After first determining that such party is interested in the controversy, the court must make a determination of the following questions applied to the particular case: (1) Is the interest of the absent party distinct and severable? (2) In the absence of such party, can the court render justice between the parties before it? (3) Will the decree made, in the absence of such party, have no injurious effect on the interest of such absent party? (4) Will the final determination, in the absence of such party, be consistent with equity and good conscience?

"If, after the court determines that an absent party is interested in the controversy, it finds that all of the four questions outlined above are answered in the affirmative with respect to the absent party's interest, then such absent party is a necessary party. However, if any one of the four questions is answered in the negative, then the absent party is indispensable."

 Generally, a reliable test of one's indispensability as a party to an action is whether he will be adversely or prejudicially affected by a proper and complete judgment in it. If he will be, he is indispensable. Egyptian Novaculite Co. v. Stevenson, 8 Cir., 8 F.2d 576; Chance v. Buxton, 5 Cir., 170 F.2d 187; Jarvis v. Shackelton Inhaler Co., 6 Cir., 136 F.2d 116; Ford v. Adkins, supra; Steinberg v. American Bantam Car Co., D.C.Pa., 76 F.Supp. 426; Steadham v. Cobb, 186 Ga. 30, 196 S.E. 730. And that consequence is not obviated by the circumstance that in his absence the judgment will not be technically binding upon him. Keegan v. Humble Oil & Refining Co., 5 Cir., 155 F.2d 971.

Proposing in Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 30 S.Ct. 10, 14, 54 L.Ed. 80, a test of indispensability in a situation in which federal jurisdiction was involved, the Supreme Court said:

"The relation of an indispensable party to the suit must be such that no decree can be entered in the case which will do justice between the parties actually before the court without injuriously affecting the rights of such absent party. 1 Street, Fed.Eq.Pr. § 519.

"If the court can do justice to the parties before it without injuring absent persons, it will do so, and shape its relief in such a manner as to preserve the rights of the persons not before the court. If necessary, the court may require that the bill be dismissed as to such absent parties, and may generally shape its decrees so as to do justice to those made parties, without prejudice to such absent persons."

Following that test the Court of Appeals, Seventh Circuit, in Texas Co. v. Wall, 7 Cir., 107 F.2d 45, 50, offered the following suggestions: "One is not an indispensable party to a suit merely because he has a substantial interest in the subject matter of the litigation, nor is one an indispensable party even though one's interest in the subject matter of the litigation is such that his presence as a party to the suit is required for a complete adjudication in that suit of all questions related to the litigation. The test as suggested in Waterman v. Canal-Louisiana Bank & Trust Co. may be stated thus: Is the absent person's interest in the subject matter of the litigation such that no decree can be entered in the case which will do justice between the parties actually before the court without injuriously affecting the rights of such absent person?"

In their application of the acknowledged governing general principles counsel have placed their chief reliance upon cases involving the attempted cancellation of agreements. While those rulings are instructive, they do not serve to bring the issue into focus as clearly as those other cases which have arisen in the immediate field of the reformation of instruments. It has to be noted, however, that many of such cases have been presented in state courts, and, therefore, under circumstances in which the factor of the indispensability of parties as an incident to federal court jurisdiction has not been present. On that account their direct present pertinence is somewhat minimized, although they are instructive in some measure.

For example, it is said in 53 C.J. 1003, Title, Reformation of Instruments, Section 156 et seq., that:

"The general doctrine as to parties in reformation is, that all persons whose interests in the subject matter, legal or equitable, will be affected by the decree, are necessary parties, whether their interests are immediately or consequentially affected. It is not required that all who are necessary parties shall possess interests which will be affected in the same manner or degree. If those who are necessary parties do not appear as plaintiffs, they should be joined as defendants. * * *

"Pursuant to general rules above stated, necessary parties to any action or suit to reform a written contract include all the parties to the instrument."

The same authority, 53 C.J. 1006, with direct reference to suits to reform insurance policies, so as to make undesignated parties beneficiaries, says: "In suit to reform insurance policy the named beneficiary in an insurance policy is a necessary party to an action brought to reform the policy by making other persons beneficiaries."

Certain cases frequently cited upon the issue are obviously distinguishable in their settings from the pending question. In Capital Fire Insurance Co. v. Langhorne, supra, affirmance was had of a judgment for a vendor under an executory contract of sale of real estate against the insurer under a policy of fire insurance in favor of the vendor and vendee as their interests might appear, despite the omission of the vendee as a party. But two features clearly fortified the ruling. The issue of defect of parties was not timely tendered; and when it was offered the statute of limitations had barred recovery by the vendee under the policy in suit. Randazzo v. Insurance Co. of State of Pennsylvania, 196 La. 822, 200 So. 267, held a mortgagee protected under

a standard mortgage clause of a fire insurance policy to be a necessary, but not an indispensable, party to a suit brought against the insurer by a purchaser of the insured premises to obtain reformation of the policy in such manner as to substitute the purchaser as insured instead of the original owner, where the prior right of the mortgagee to protection to the extent of its lien was not drawn in question. In Morris v. Franklin Fire Insurance Co., 9 Cir., 130 F.2d 553, the District Court had dismissed for want of diversity of citizenship an action brought by an insured furrier against the insurer of customers' property in his custody and also against the customers (some at least of whom were citizens of the furrier's state) to obtain reformation and enforcement as reformed, of the policy. The Court of Appeals reversed on the ground that while the customers were proper parties, they were not necessary parties and the only indispensable parties were the furrier and the insurer. Commercial Casualty Ins. Co. v. Lawhead, 4 Cir., 62 F.2d 928 held that the depositee bank and its receiver, both citizens of a state in which the action was not pending, were not indispensable parties to a suit by a depositor of the bank against an insurance company which had issued a policy guaranteeing a deposit in the bank made by the plaintiff, where the object of the suit was to obtain the reformation of the policy in such a way that it would cover and insure a specifically described deposit. The ruling was grounded on the thought that the insurer would lose no right against the bank or its assets by virtue of any judgment which might be rendered in the suit between the parties already before the court.

Suits in equity brought to obtain the reformation of policies of insurance so as to modify the designation of the parties insured, or of the beneficiaries, therein have produced a variety of results, depending largely upon their differing objectives. Thus, without unnecessary citation of authorities, it is quite generally held that where the moving party aims at the exclusion, from all benefits, or the diminution of the protection, of a designated insured or beneficiary, such insured or beneficiary is an indispensable party to the action. By way of an uncomplicated illustration, see Hamilton v. Fidelity & Casualty Co., Sup., 171 N.Y.S. 580. This follows from the demonstration that, within the thought of the test quoted from State of Washington v. United States, supra, the interest of the designated insured or beneficiary is not distinct and severable from the plaintiff's objective, in his absence the court can not render justice between the parties before it, the decree in his absence would have an injurious effect upon his interest, whether strictly binding upon him or not, see Keegan v. Humble Oil & Refining Co., supra, and final determination without him would be inconsistent with equity and good conscience.

Efforts to effect reformation merely in the way of enlarging the number of protected parties, without nullifying or diminishing the coverage of the designated insured or beneficiary have not encountered invariable treatment.

In American Fidelity & Casualty Co. of Richmond, Va. v. Elder, 189 Ga. 229, 5 S.E. 2d 668, 669 an attempt was made by one Fox, and two judgment creditors of Fox under personal injury judgments against him, to obtain the reformation of a taxicab public liability policy, and an antecedent binder, in such manner as to designate as the insured parties four individual taxicab operators, including Fox, who employed a common trade name but were not at all associated in business, as partners or otherwise, together with their taxicabs by appropriate description. Upon an oral request for coverage, the insurer had first issued a binder naming as the persons insured the four operators, "operating as Imperial Cab Company, a partnership" and properly identifying their vehicles. On the same day or the following morning, Fox had the accident with his taxicab out of which the judgments arose. In the afternoon of the day after it had executed the binder, the insurer cancelled it and issued a formal policy of insurance describing as insured the three operators, other than Fox, still mistakenly designating them as partners under the cited name. In their suit for reformation and enforcement Fox

and his judgment creditors included the three other operators along with the insurer as defendants. The insurer, being the only citizen of a state other than Georgia, undertook to remove to the Federal Court. The trial court refused to order removal, and on appeal the Supreme Court affirmed. Taking refuge in its earlier announced general rule that the designated insured under a contract of indemnity insurance must be made a party to a suit for its reformation so as to change the designation, and concluding that the case before it was not within the exception defined in Steadham v. Cobb, 186 Ga. 30, 196 S.E. 730, the Supreme Court said of the three defendant taxicab operators: "The binder named the plaintiff assignor and the three individual defendants as the insured, and described their four automobiles, but insured them as operating under a trade name as a 'partnership.' The policy described only the three individual defendants and their three automobiles as operating under a trade-name as a 'copartnership,' and entirely omitted any reference to the fourth individual, the plaintiff assignor, or his automobile. Without reformation, only the partnership could recover on the binder contracts since the plaintiff assignor and the three individual defendants were insured therein only as a partnership, and only the partnership, composed of the three individual defendants, could recover on the policy, and the plaintiffs would be excluded from such a recovery, since the writing insured only such defendants without referring to the plaintiff assignor or his automobile. Since no partnership was a party to the assignment to the plaintiffs, and they seek to reform the binder and the policy solely for their benefit as individuals, without any participation of the three individual defendants in the benefit of any present or future recovery from any loss, as a partnership or otherwise, and thus seek to change materially the status and rights of such individual defendants under the binder and the policy, it cannot be said that their interests would not be affected by the decree prayed for, even though no money judgment is sought against them, so as to make them merely nominal parties, * * *."

In a different context it was held in Cantlay v. Olds & Stoller Inter-Exchange, 119 Cal.App. 605, 7 P.2d 395, 400, that the named assured was not a necessary party to a suit brought to reform a motortruck insurance policy so as to extend its coverage to the owners of certain trucks leased to the named assured and by it used in its business. Emphasis was placed upon the fact that the plaintiffs' demand sought no impairment or denial of the coverage of the named assured but merely its extension to the owners of the trucks used by the named assured which was itself protected in their use under the policy. It was, therefore, concluded that the named assured was "not affected in any manner by the decree of the court in this action", and that, such being the case, it was "not a necessary party to a determination of the issues between the plaintiffs and the defendant."

Kelsey v. Agricultural Ins. Co., 78 N.J. Eq. 378, 79 A. 539, held in the first paragraph of its syllabus that: "Where a fire policy, containing a mortgage clause, did not correctly set forth the contract that the loss should be payable to the first mortgagee, as his interest might appear, and to the second mortgagee, as his interest might appear, because of a failure to state the rights of the second mortgagee, the second mortgagee could sue insurer to reform the policy without making the owner or the first mortgagee a party".

In Traders & General Ins. Co. v. Pool, Tex.Civ.App., 105 S.W.2d 492, 495, the widow of an oil worker killed by a storm while in the course of his employment by one Fain Johnston, an oil driller, in behalf of herself and a minor child, sued for compensation under the Texas Employers' Liability Act, Vernon's Ann.Civ.St. art. 8306 et seq., and included as defendant only the supposed corporate insurer of Fain Johnston's liability under the Act. The insurer had written the policy in such manner that the insured employer was designated as "Johnston Brothers, Drilling Contractors", but in fact no such partnership existed at the time it was written (although Sidney Johnston, a brother of Fain Johnston, was independently engaged in the same busi-

ness), and Fain Johnston alone had sought and paid for the policy. In the course of the prosecution of the action, the plaintiff, by amended petition, set out the circumstances of the issuance of the policy and demanded its reformation so as to designate Fain Johnston as the assured. On the day of trial Fain Johnston by petition in intervention assented to that prayer, although he asked for no relief in his own behalf and none was sought by the plaintiff against him. (The writer understands that under the law of Texas an employer who insures in an admitted carrier his liability under the state's Employers' Liability Act is not, while the insurance persists, personally liable for the payment of benefits under it.) Sidney Johnston was not a party to the suit and the insurer, by way of defense, assigned his absence as a ground for the dismissal of the action. The assignment was rejected. However, the court placed its ruling principally on the ground that, without proceeding against either of the Johnstons, and even without formal quest of reformation the plaintiff upon proof of the mistake in the writing of the policy could have recovered judgment against the insurer alone.

An examination of the foregoing policy reformation cases does not disclose a clearly defined consistency in result. Variant facts, if nothing else, eliminate its possibility. However, an observable pattern does appear in all of them, when they are understood in the light of the general tests of "indispensability" and "necessity" in respect of parties to actions, already recalled. In them, with greater or less detail, the courts have inquired whether the person under consideration had such an interest in the subject matter of the litigation that no decree reasonably and effectively allowable in the circumstances could be entered between the parties before the court without affecting adversely the rights of the absent person. If that question was answerable only in the affirmative, the person was regarded as an indispensable. Otherwise, though he may have been within the judicial definition of a necessary or a proper party, he was not held to be indispensable.

Applying that test in the present situation, the court is persuaded that the partnership designated as the insured in endorsement upon the policy before the court has no such interest in the insurance coverage drawn into consideration as will prevent the entry of the decree between the present parties which the proofs may warrant, without adverse impact upon the named insured. If the plaintiff's proofs fail, his complaint will be dismissed and that will leave the policy intact and unmodified. But, if the evidence compels the entry of a decree in accordance with his prayer, the partnership will remain essentially unaffected by it. The prescribed term of the policy's coverage has expired. During it, the partnership presumably enjoyed the protection it desired and incurred the obligation for the finally determined premium contemplated in the contract, which has undoubtedly been arrived at by audit and paid, although the court is not materially concerned on that score. If the reformation sought be granted, the partnership's coverage will be unaffected, as will any liability for benefits under it which may have resulted from injuries to its workmen during its term.

What burden could conceivably be imposed on the partnership in consequence of the reformation sought? As a practical matter the court can conceive of none. To be sure, if the coverage of the policy be extended to the plaintiff, the gross premium under it will be increased in a presently unknown amount. And, if the protected operators are jointly and severally liable for all premiums payable under the policy, it may be considered that a liability could be imposed upon the partnership for that additional premium. But that apprehension is unrealistic. The court in its decree can readily impose the plaintiff's payment of any resulting additional premium as a condition to the granting of his prayer. And, since the premium for coverage of the partnership's own operations is contractually determinable by the application of defined rates to its own actual payroll, that item would seem to be unaffected by any appropriate course which this case may take.

520

. It is concluded, therefore, that the partnership is not an indispensable party to this action and that the defendant's motion must be denied and overruled.

An order is being entered accordingly, in which the defendant is granted twenty days from this date within which to serve and file its answer to the amended complaint.